**FILED**

**May 31, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 12:05 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Rachel Hackney<br>Employee, | )<br>)<br>) | Docket No.: 2015-01-0091 |
| | )<br>) | State File No.: 9736 2016 |
| v. | )<br>) | Judge Audrey A. Headrick |
| Integrity Staffing Solutions, Inc.<br>Employer. | )<br>)<br>) | |

## EXPEDITED HEARING ORDER DENYING
## REQUESTED BENEFITS

This matter came before the Court on May 6, 2016, on a Request for Expedited Hearing filed by the employee, Rachel Hackney, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Ms. Hackney is likely to prevail at a hearing on the merits in proving entitlement to temporary partial disability and medical benefits. For the reasons set forth below, the Court finds Ms. Hackney is not entitled to medical or temporary partial disability benefits.[1]

### History of Claim

Ms. Hackney is a thirty-six-year-old resident of Catoosa County, Georgia. She worked for Integrity, a temporary staffing agency. Ms. Hackney allegedly suffered a left wrist injury on December 27, 2015, while working as a loader on the shipping dock at Amazon. Her shift was 6:00 p.m. to 6:00 a.m. Integrity stipulated to compensability for purposes of the expedited hearing.

Immediately after reporting her injury to her team leader, Josh Case, Ms. Hackney walked to Amcare, Amazon's on-site medical clinic.[2] (Ex. 1.) Ms. Hackney testified she

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] Amazon employs Amcare personnel, who are first responders.

1

completed an Associate First Report of Injury form at Amcare. (Ex. 11.) She completed the form entirely in her own handwriting. Ms. Hackney also marked that she declined first aid. *Id.* When asked if outside medical treatment was offered, Ms. Hackney marked "yes." *Id.* She wrote that a "panel" was the type of outside medical treatment offered. *Id.* When asked if she declined outside medical treatment, Ms. Hackney marked "yes." *Id.* Above her signature, the form states that "[t]he information given is true and correct." *Id.*

Ms. Hackney testified she did not refuse the first aid offered to her, icing and ibuprofen. She also stated she only declined ambulance transportation and further testified she did not receive a panel of physicians until December 30, 2015. Although Ms. Hackney testified she personally completed the Associate First Report of Injury form, she stated that a female who worked for Amcare assisted her with the bottom portion of the form.

After leaving Amcare, Ms. Hackney went to her car during her lunch break. When she returned to work, she stated she went to the Integrity desk and said she was hurting and needed to go see a doctor.[3] Ms. Hackney stated the Integrity desk informed her she did not have to report to Amcare, so she signed herself out. However, the Amcare records reflect that Ms. Hackney "returned to Amcare shortly after initial treatment and stated that the pain was unbearable, and that she was leaving to go to the ER. [Ms. Hackney] was referred to Integrity." (Ex. 1.)

Ms. Hackney stated the Integrity desk provided her with contact information for Joe Holland, Safety Manager for Integrity. Ms. Hackney stated she did not contact Mr. Holland before going to Parkridge hospital. Instead, she gave his contact information to personnel at Parkridge. At Parkridge, she had several x-rays taken of her left wrist, which were normal. (Ex. 3.) The medical provider diagnosed Ms. Hackney with a wrist sprain and prescribed Ibuprofen and Ultram. *Id.* The medical provider took her off work from December 28, 2015, through December 29, 2015.[4] *Id.*

Mr. Holland testified he first received notice that Ms. Hackney sought emergency room treatment at approximately 1:00 a.m. on December 28, 2015, when a desk clerk from Parkridge called him.[5] The clerk informed him Ms. Hackney was present in the emergency room, asked if he would authorize treatment and asked if he wanted Parkridge to conduct a drug screen. Mr. Holland responded he had no knowledge an associate had requested treatment, and he did not authorize a drug screen or any treatment. When he

---

[3] The Integrity desk is a question and answer kiosk at Amazon for Integrity employees.

[4] Since Ms. Hackney worked the night shift, it was December 28, 2015, when she went to Parkridge. *Id.*

[5] Mr. Holland's testimony regarding the telephone call he received from Parkridge was not admitted for the truth of the matter asserted. The Court overruled the objection pursuant to Rule 803(3) of the Tennessee Rules of Evidence to explain Mr. Holland's subsequent conduct.

asked if he could speak to Ms. Hackney, the desk clerk advised she was already being treated. Mr. Holland testified his management team notifies him if an associate advises that she is leaving due to pain or is going to the doctor or hospital due to an injury. The associate can also contact him directly. Further, Mr. Holland stated that an Integrity manager contacts him if an employee indicates to Integrity management that medical treatment is needed.

Mr. Holland stated Ms. Hackney called him around 3:00 a.m. on December 28, 2015, stating she went to the emergency room and was told he did not authorize the visit. He told her she needed to meet him and select a provider from a panel. Mr. Holland also told her she could submit the Parkridge medical records, and he would submit them to workers' compensation for review.

Ms. Hackney did not meet with Mr. Holland on December 28, 2015, so he called her later that day and left a voice message. On December 29, 2015, Mr. Holland spoke with Ms. Hackney. She agreed to meet him on December 30, 2015. Ms. Hackney confirmed she received several calls from Mr. Holland about meeting him at Amazon to discuss a panel.

On December 30, 2015, Ms. Hackney selected Workforce Corporate Health from a panel and saw Dr. Jayant Eldurkar the next day. (Ex. 12.) He diagnosed a left wrist contusion and released her to return to work with restrictions of no climbing ladders, no lifting more than twenty pounds, and lifting no more than twenty pounds fifty percent of the time. *Id.*

Mr. Holland testified that Amazon performed a job safety analysis based upon the restrictions. He offered Ms. Hackney a position in "flat sort" that was consistent with her restrictions. The position required her to turn packages upright for scanning and put them on a conveyor belt. Ms. Hackney stated the job required repetition and asserted she was "not allowed" to do repetitive work. During the hearing, Ms. Hackney stated she believed she could now perform the sorting job by using one hand after receiving an injection the prior day.

After working a short time in flat sort, Ms. Hackney contacted Mr. Holloway stating it was difficult for her to do the job due to pain in her wrist. She testified Amazon's policy prevented her from taking pain medication at work. Due to Ms. Hackney's complaints, Mr. Holloway scheduled her to go to Workforce on January 5, 2016. Dr. Eldurkar ordered an MRI of her left wrist and increased her restrictions to no climbing, no pushing with left arm, and no lifting above ten pounds. Mr. Holloway stated there were no on-site jobs for her to do. However, he stated Integrity places employees with restrictions in Amazon's recruiting office/opportunity center. The employees are paid forty hours per week for all clocked-in hours, which includes travel time to and from doctors' appointments.

3

Mr. Holloway met with Ms. Hackney on January 7, 2016, to provide her with a Transitional Work Offer Letter. (Ex. 6.) The letter stated the position was available that day at the opportunity center. *Id.* Mr. Holloway told Ms. Hackney the position was on first shift from 8:30-5:00. He also explained there would be downtime, and she could bring something to read or do during those times. Mr. Holloway stated that Ms. Hackney responded she needed to make childcare arrangements. In her Affidavit, Ms. Hackney stated:

> I reminded Mr. Holland that I could not come in between 8-5 p.m. because my husband worked days; so, I had to be home with and for the kids during the day. Mr. Holland stated that was not his problem; that I would have to figure that out myself.

Ms. Hackney's normal shift that she worked at Amazon was four days a week, ten hours per day on third shift. She has three biological children ages fourteen through seventeen. Ms. Hackney also obtained custody of her four-year-old niece in January 2016. All of the children attend school.

The Transitional Work Offer letter dated January 7, 2016, reflects Ms. Hackney signed the refusal of the transitional work assignment, but she wrote on the form next to her signature, "will accept on 1/11/16." *Id.* On January 8, 2016, Mr. Holloway stated he received a letter of representation from Ms. Hackney's attorney. Ms. Hackney did not appear for work on January 11, 2016. Instead, Mr. Holloway stated he received a text message from Ms. Hackney on January 11, 2016, at 8:15 a.m. stating "[g]o a head [sic] to your other meetings. I am not gonna be there this morning. I have a Doctors [sic] appointment today as well does my son. Thank you." (Ex. 13.) Mr. Holloway subsequently contacted Ms. Hackney regarding her February 2016 appointment with Dr. Jemison, and she returned his call. After that, he had no further contact with Ms. Hackney.

On March 23, 2016, Integrity sent correspondence to Attorney Carmen Ware with a temporary transitional duty Transition2Work assignment. (Ex. 14.) Integrity offered a temporary position at Providence Thrift Store located in Dalton, Georgia beginning on March 29, 2016. *Id.* The work schedule was Monday through Friday from 9:00 a.m. to 5:30 p.m. *Id.* Ms. Hackney testified she declined the offer of light duty work because she needed to be home for the children.

On April 15, 2016, Integrity sent correspondence to Attorney Ware with another temporary transitional duty Transition2Work assignment. (Ex. 15.) Integrity offered a temporary position at Providence Ministries Thrift Store located in Chattanooga, Tennessee beginning on April 20, 2016. *Id.* The work schedule was Monday through Friday from 10:30 a.m. to 7:00 p.m. Ms. Hackney testified she declined the offer of light

duty work because she needed to be home for the children.

However, Ms. Hackney acknowledged Attorney Ware notified her of the offer of light duty work, and she was aware of April 18, 2016 letter Attorney Ware sent to Attorney Charlie Poss. (Ex. 16.) In the letter, Attorney Ware stated, in part, that Ms. Hackney "remains consistently available to work the night shift from 6:30 p.m. to 5:30 a.m." *Id.*

In addition to Ms. Hackney's assertion that she could not accept the light duty offered due to childcare issues, she also stated she declined the March 23, 2016 offer to work at Providence Thrift Store in Dalton, Georgia because of the store's location and safety concerns, specifically homeless people living under a nearby bridge. Ms. Hackney also stated that Providence Thrift store provides a service to people with substance abuse problems where they can go to "get clean."

Ms. Hackney argued that her decision to seek treatment on her own at Parkridge hospital was reasonable and justified. She stated she returned to Amcare and reported she was going to the emergency room due to unbearable pain. Ms. Hackney contended there was a breach in protocol because Integrity did not offer her a panel immediately after she gave notice of her left wrist injury on December 27, 2015. She argued she should not be adversely affected by Integrity's failure to give her a panel until December 30, 2015.

Regarding the issue of temporary partial disability benefits, Ms. Hackney contended she did not have an offer of "work" and/or she did not have a meaningful offer of employment. She argued the January 7, 2016 offer was not an offer of "work" and was not a meaningful offer. Ms. Hackney asserted Integrity did not provide a job description so she did not know if the work would be within her restrictions. Also, the January 7, 2016 offer and the subsequent offers in March 2016 and April 2016 were not meaningful offers because the offers were for a shift Integrity knew she could not work. Ms. Hackney distinguishes *Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn. 1995), cited by Integrity, from her situation because in *Newton* the employee went through treatment, returned to work, and the special shift created for her was no longer available. However, Ms. Hackney did not work a special shift. Instead, she worked third shift, so an offer to work the day shift was not reasonable. Additionally, the offer to work at the Providence Thrift Store in Dalton, Georgia was not reasonable because it was in an unsafe area known to be overrun with homeless people and people with a history of substance abuse.

Integrity argued Ms. Hackney is responsible for the medical bill from Parkridge. The Amcare Associate First Report of Injury Safety Form completed by Ms. Hackney documented she declined the panel offered to her on December 27, 2015. She then proceeded to obtain unauthorized treatment on her own at Parkridge hospital. Although

she had Mr. Holland's contact information, she did not contact him prior to going to Parkridge. Integrity pointed out that although Ms. Hackney reported a pain level of seven at Parkridge on December 28, 2015, and a pain level of six to Dr. Eldurkar on December 31, 2015, Dr. Eldurkar released her to return to work the following day with restrictions.

Integrity also argued Ms. Hackney is not entitled to temporary partial disability because she declined Integrity's offers of light duty work for purely personal reasons. It contended that *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 328-329 (Tenn. 2008), cited by Ms. Hackney, explains the applicable principle that an employee who does not return to work for personal reasons is deemed to have made a meaningful return to work. Likewise, Ms. Hackney's reasons for not accepting the light duty work offered were for reasons unrelated to her injury. There is no requirement that an employer must offer an employee the same shift in order to accommodate light duty restrictions. Further, it argued that the employee in *Newton, supra,* also declined the employer's offer to return to work for purely personal reasons, and the employee's recovery for permanent partial disability benefits was capped.

Ms. Hackney filed a Petition for Benefit Determination seeking medical benefits and temporary partial disability benefits. The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on March 4, 2016. Ms. Hackney filed a Request for Expedited Hearing, and this Court heard the matter on May 6, 2016.[6]

### Findings of Fact and Conclusions of Law

Ms. Hackney has the burden of proof on all essential elements of a workers' compensation claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[7] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). She is not required to prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Hackney has the burden to come forward with sufficient evidence from which the trial court can determine that she is likely to prevail at a hearing on the merits. *Id.*

---

[6] The expedited hearing in this matter lasted almost five and a half hours.

[7] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

## *Medical Benefits*

The Court will first address whether Integrity must pay for Ms. Hackney's visit to Parkridge hospital on December 28, 2015. The issue of whether Integrity should have offered Ms. Hackney a panel of physicians immediately upon her report of a work injury is intertwined with her decision to seek unauthorized emergency treatment. Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." However, the Workers' Compensation Law requires that before holding Integrity responsible for unauthorized medical expenses, an assessment must be made as to whether, under the circumstances, Ms. Hackney acted reasonably in seeking unauthorized care. *U.S. Fid. & Guar. Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn. 1990). The conclusion depends on the circumstances of each case. *Dorris v. INA Ins. Co.*, 764 S.W. 2d 538, 541 (Tenn. 1989).

The circumstances of Ms. Hackney's case lead the Court to conclude it was not reasonable for her to seek unauthorized treatment at Parkridge without properly notifying Integrity. Ms. Hackney testified she completed the Associate First Report of Injury form at Amcare in her own handwriting. (Ex. 11.) On the form, she checked that she declined the offer of outside medical treatment, which was a "panel." *Id*. Ms. Hackney provided no testimony that she subsequently changed her mind and requested either a panel of physicians or authorization to go to the emergency room from a member of management. Instead, she testified that she told the Integrity personnel at the kiosk that she was leaving to go to the doctor, and they provided her with the contact information for Mr. Holland, Integrity's safety manager. Ms. Hackney testified she did not need to return to Amcare. However, the record reflects she stopped by Amcare and stated she was on her way to the emergency room. (Ex. 1.) The record indicated the Amcare staff referred her to Integrity. *Id*.

Although Ms. Hackney testified she received contact information for Mr. Holland, she did not attempt to contact him or any other member of Integrity's management prior to receiving treatment at Parkridge. Instead, Ms. Hackney chose to contact Mr. Holloway at approximately 3:00 a.m. *after* she was discharged from Parkridge.

Under the foregoing circumstances, the Court finds it was reasonable that Ms. Hackney did not immediately receive a panel upon giving notice of her left wrist injury. The Court also finds it was not reasonable for Ms. Hackney to obtain unauthorized, emergency treatment at Parkridge without providing proper notice to Integrity. Accordingly, Ms. Hackney has not demonstrated that she is likely to prevail at a hearing on the merits regarding the issue of medical benefits.

*Temporary Partial Disability Benefits*

The Court next turns to whether Ms. Hackney is entitled to any temporary partial disability benefits. Entitlement to temporary partial disability occurs when the temporary disability is not total. Tenn. Code Ann. § 50-6-207(2) (2015) provides that "[i]n all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3 %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." When an injured worker is willing to return to work within his restrictions, but the employer is unwilling or unable to return the injured worker to work, the injured worker may be entitled to recover temporary partial disability benefits equal to the amount of temporary total disability benefits. *See Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *7-8 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

The Court finds that there is no evidence to indicate that Integrity's offers of light duty work were unreasonable or that Integrity failed to offer Ms. Hackney light duty work within her restrictions. Instead, the record is replete with examples of Integrity's offers to accommodate Ms. Hackney's restrictions despite her continued refusal to accept the work offered. Ms. Hackney testified she could not perform the flat sort work initially offered by Integrity because it caused her pain due to the repetitious work, which she stated she was not allowed to do. However, the work restrictions issued by Dr. Eldurkar did not restrict her from repetitive work. Nonetheless, Integrity removed Ms. Hackney from flat sort and offered her light duty work in Amazon's opportunity center on January 7, 2016. Although Ms. Hackney declined the work and wrote, "will accept on 1/11/16," she did not report for work on January 11, 2016, because she needed to be home for her children. Specifically, Ms. Hackney refused the January 7, 2016 offer, the March 23, 2016 offer, and the April 15, 2016 offer because she testified she needed to be home for her children.

The Court recognizes Ms. Hackney previously worked third shift prior to her injury. However, Ms. Hackney provided no case law for the contention that an employer must offer light duty work on the same shift or in an area perceived by the employee to be safe.

As indicated in *Williams*, an employee's entitlement to temporary partial disability benefits hinges in part on an employee's willingness to return to work within the injured worker's restrictions. In the present case, Ms. Hackney did not accept light duty work within her restrictions due to personal reasons. For the reasons set forth above, it appears Ms. Hackney has not demonstrated that she is likely to prevail at a hearing on the merits regarding the issue of temporary partial disability benefits.

8

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Hackney's request for payment of the treatment she sought at the emergency room is denied.

2. Ms. Hackney's request for temporary partial disability benefits is denied.

3. The correct calculation of Ms. Hackney's average weekly wage is moot for purposes of this expedited hearing.

4. This matter is set for an Initial Hearing on August 9, 2016, at 10:00 a.m., ET.

   **ENTERED this the 31st day of May, 2016.**

   _Audrey Headrick_
   **Judge Audrey A. Headrick**
   **Court of Workers' Compensation Claims**

9

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set on August 9, 2016, at 10:00 a.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note:  You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**


Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.**  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. AmCare records
2. Amazon's Report of Incident
3. Medical records of Parkridge East Hospital
4. Medical records of Workforce Corporate Health
5. Office notes of Dr. D. Marshall Jemison dated March 10, 2016, and May 5, 2016
6. Transitional Work Offer Letter dated January 7, 2016
7. Affidavit of Barbara Blosser, Payroll Manager for Integrity Staffing Solutions, Inc. with Employee Wage Statement attached
8. Form C-23 Notice of Denial of Claim for Compensation
9. Integrity Staffing Solutions job description form
10. Affidavit of Rachel Hackney
11. Amcare Associate First Report of Injury Safety Form
12. Form C-42 Agreement Between Employer/Employee Choice of Physician
13. Text message from Ms. Hackney to Mr. Holland on January 11, 2016, at 8:15 a.m.
14. Letter dated March 23, 2016, from Victoria Taylor at Integrity Staffing Solutions to Attorney Carmen Ware with Offer of Alternative Modified Work attached
15. Letter dated April 15, 2016, from Ms. Taylor to Ms. Ware with Offer of Alternative Modified Work attached
16. Letter dated April 18, 2016, from Ms. Ware to Attorney Charlie Poss
17. Blank Transitional Work packet

Technical record:[8]
1. Petition for Benefit Determination, February 2, 2016
2. Plaintiff's Motion to Quash Subpoenas, February 15, 2016
3. Response in Opposition to Plaintiff's Motion to Quash Subpoenas, February 16, 2016
4. Order Denying Plaintiff's Motion to Quash Subpoenas, February 29, 2016
5. Dispute Certification Notice, March 4, 2016
6. Request for Expedited Hearing, March 18, 2016
7. Memorandum of Law Supporting Plaintiff's Request for Expedited Hearing and Response to Employer's Position Statement, March 18, 2016
8. Notice of Scheduled Hearing, April 7, 2016

---

[8] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 31st day of May, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Carmen Ware | | | | | X | cyware@thewarelawfirm.com |
| Charlie Poss | | | | | X | charlie.poss@leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

13