

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| **Justin Lee,** | **Docket No.: 2016-06-0912** |
| Employee, | |
| v. | **State File No.: 70538-2015** |
| **Western Plastics,** | |
| Employer. | **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS
## (REVIEW OF THE FILE)

---

This cause came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by the employee, Justin Lee, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Western Plastics, is obligated to provide workers' compensation benefits. Pursuant to Rule 0800-02-21-.02(13) (2015) of the Tennessee Compilation Rules and Regulations, Mr. Lee requested the Court issue a ruling based on a review of the file without an evidentiary hearing. On August 24, 2016, the Court sent a Docketing Notice to the parties regarding the contents of the record before it. (T.R. 4.) Neither party raised any objection to the documents contained in the record or offered any additional evidence. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment.

The dispositive issue is whether Mr. Lee's post-surgery shoulder dislocations constitute intervening events sufficient to break the causal connection between Mr. Lee's original injury and his current need for medical treatment. The Court holds the evidence submitted by Mr. Lee is sufficient to establish he is likely to prevail at a hearing on the merits regarding the reasonableness and necessity of additional treatment, including surgery as recommended by his authorized physician, for his work-related injury.

### History of Claim

While working for Western Plastics on August 31, 2015, Mr. Lee dislocated his

1

right shoulder when he hit his arm on a conveyor belt. (Ex. 1.) Western Plastics accepted the injury as compensable and authorized Dr. Calvin Dyer, an orthopedist, to provide treatment. (Ex. 2.) Dr. Dyer eventually performed surgery on December 5, 2015, to stabilize Mr. Lee's shoulder.[1] (Ex. 1.)

On January 9, 2016, Mr. Lee followed up with Dr. Dyer. (Ex. 2 at 16.) Mr. Lee reported he had experienced no further subluxation events and he was working in therapy to increase his strength and range of motion. Dr. Dyer released Mr. Lee to return to work at regular duty and did not recommend any physical restrictions or physical therapy other than home exercises. (Ex. 2 at 6.) He scheduled Mr. Lee to return in one month, at which time he anticipated Mr. Lee would be at maximum medical improvement (MMI). (Ex. 2 at 16.)

Mr. Lee quit his job with Western Plastics and moved to Madisonville, Kentucky on January 27. (Ex. 1.) On January 31, a large dog jumped on Mr. Lee and dislocated his right shoulder again. (Ex. 1.) Mr. Lee went to the emergency room in Kentucky where Dr. Christopher Cheatham reduced the dislocation. (Ex. 3.)[2] A few days later, Mr. Lee returned to Dr. Dyer, who noted Mr. Lee had been doing "extremely well" following his surgery until a "large 100-pound dog" jumped on him and "re-dislocated" his right shoulder. (Ex. 2 at 14.) Dr. Dyer noted no specific symptoms following his reduction at the emergency room other than slight tenderness anteriorly. Mr. Lee exhibited full range of motion and good rotator cuff strength. Dr. Dyer observed it was "unfortunate" Mr. Lee had a "new injury" but hoped it would only "slow him down minimally." *Id.* Dr. Dyer determined Mr. Lee was at MMI and released him without restrictions. *Id.*

Mr. Lee then dislocated his right shoulder again on February 29 when he rolled over in bed. (Ex. 1.) He had the dislocation corrected and returned to Dr. Dyer on March 18. (Ex. 2 at 11.) On exam, Dr. Dyer noted Mr. Lee exhibited nearly full range of motion with some mild pain and apprehension present. Dr. Dyer also observed Mr. Lee had been working on range-of-motion exercises at home but did not have exercise bands. *Id.* He recommended another short course of physical therapy and a follow-up visit in six weeks. *Id.* However, he did not place any physical restrictions on Mr. Lee's activities.

Dr. Dyer saw Mr. Lee again on April 28, 2016. (Ex. 2 at 8.) At this visit, Mr. Lee recounted an episode that occurred the week before where he "swatted at a dog to get its' [sic] attention" when his shoulder dislocated again. (Ex. 1.) Mr. Lee again went to the emergency room to have the dislocation corrected. (Ex. 2 at 8.) Dr. Dyer noted Mr. Lee "has had recurrent instability for four months following shoulder stabilization." He observed that, "[u]nfortunately, [Mr. Lee] had mild trauma while he was still in a sling, which dislocated his shoulder." *Id.*

---

[1] The parties did not provide a complete copy of Dr. Dyer's medical records.
[2] Mr. Lee did not submit any records, but only bills received from his emergency room visits that Western Plastics refused to pay.

Given this "recurrent instability," Dr. Dyer recommended revision surgery. In his record, Dr. Dyer noted that,

> His compliance is an issue, and I confronted him and counseled him at length about the operative procedure and the need for compliance and exercises. He has a set of unfortunate circumstances for this work-related injury periods. [sic] The recurrent instability unfortunately occurred during his recovery. He never had a chance to heal.

*Id.* Dr. Dyer concluded his note by stating, "Although this is a complicated situation, with a reasonable degree of medical certainty, the original dislocation had an episode at work followed by trauma and his recovery from this work injury." *Id.* Although he recommended surgery, Dr. Dyer again declined to recommend any restrictions against Mr. Lee's physical activities pending approval of his surgery. (Ex. 2 at 7.)

Western Plastics denied surgery on the grounds that Mr. Lee's need for surgery did not primarily arise out of and in the course of his employment with Western Plastics. (Ex. 1.) On July 23, 2016, Mr. Lee slipped while vacuuming his car and re-dislocated his shoulder while attempting to catch himself. *Id.*

Mr. Lee contends he is entitled to reimbursement for emergency room visits as well as additional medical treatment, including surgery, because his recurrent shoulder instability is a direct result of his work-related injury of August 31, 2015. Western Plastics counters that the evidence establishes Mr. Lee's recurrent shoulder instability is due to subsequent intervening events unrelated to the original work injury; therefore, any expenses incurred, or additional treatment needed, due to subsequent dislocations are non-compensable.

### Findings of Fact and Conclusions of Law

The Court must interpret Workers' Compensation Law fairly, impartially, and by basic principles of statutory construction, favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Mr. Lee has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Mr. Lee need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Lee has the burden to come forward with sufficient evidence from which the trial court can

determine that he is likely to prevail at a hearing on the merits. *Id.*; *see also* Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order to prevail, Mr. Lee must establish that his recurrent shoulder dislocations and his current need for medical treatment are the "direct and natural result" of the undisputed work injury he sustained on August 15, 2015. *Rogers v. Shaw*, 813 S.W.2d 397, 399-400 (Tenn. 1991).[3] In other words, "every natural consequence that flows from the injury likewise arises out of the employment, and consequently, all the medical consequences and sequelae that flow from the primary injury are compensable." *Anderson v. Westfield Group*, 259 S.W.3d 690, 696 (Tenn. 2008). As in most instances, causation must be established by medical evidence, and as the authorized physician, Dr. Dyer's opinion on this issue is afforded a statutory presumption of correctness. *See* Tennessee Code Ann. § 50-6-102(12)(A)(ii) (2015).

In this matter, Western Plastics points out that when Dr. Dyer saw Mr. Lee after the first dislocation that occurred subsequent to surgery, he referred to it as a "new injury." (Ex. 2 at 14.) Furthermore, despite this dislocation, Dr. Dyer placed Mr. Lee at maximum medical improvement for the "work-related right shoulder dislocation" occurring on August 31, 2015. (Ex. 2 at 1.) Western Plastics argues these statements establish that Dr. Dyer believes Mr. Lee's post-surgical dislocations are unrelated to his August 2015 work injury, thus rendering them non-compensable.

However, Western Plastics' argument fails to consider Dr. Dyer's records as a whole. It is clear that in January Dr. Dyer felt Mr. Lee had recovered well from surgery, given that he had full range of motion and good rotator cuff strength, and hoped the subsequent dislocation would only "slow him down minimally." (Ex. 2 at 14.) However, as Mr. Lee continued to suffer from shoulder dislocations, often over seemingly trivial activities such as rolling over in bed or swatting at a dog, Dr. Dyer revised his opinion. In April, Dr. Dyer noted Mr. Lee continued to suffer from "recurrent instability" after incurring "mild trauma" while still in his sling. (Ex. 2 at 8.) He further noted the "recurrent instability" occurred during Mr. Lee's recovery, and "he never had a chance to

---

[3] Case law pre-dating the July 1, 2014 Reform Act is not only persuasive, but also controlling, when the prior decision is based solely, or in pertinent part, on a previous version of the law which remains unchanged by the 2013 Reform Act. Therefore, in cases where the Supreme Court has addressed a causation issue not based on the remedial nature or liberal construction of the prior Act, this Court is bound by the Supreme Court's analysis. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *7 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

heal." *Id.*

Dr. Dyer concluded his report with a causation statement that is admittedly less than clear; i.e. "the original dislocation had an episode at work followed by trauma and his recovery from this work injury." *Id.* Nevertheless, when considering the record as a whole, the Court finds Dr. Dyer's record is sufficient to establish he has opined Mr. Lee's "recurrent instability" and need for revision surgery causally relate to his initial work injury on August 15, 2015. Thus, Mr. Lee is likely to prevail at a hearing on the merits regarding this issue. *McCord,* at *8.

However, that is not the end of the inquiry. While Dr. Dyer's opinion is sufficient to establish a causal link between Mr. Lee's original injury and his current need for revision surgery, the question remains whether a subsequent intervening event created a break in the causal chain sufficient to relieve Western Plastics from additional liability. *Anderson,* at *696. In this instance, the Court holds there was not.

In its response to Mr. Lee's REH, Western Plastics cited *Anderson* for its argument that an employee's conduct subsequent to his injury can serve to break "the chain of causation necessary to impose liability for a subsequent injury." *Id.* at *697. While correct, *Anderson* goes on to hold, however, that the employee's conduct that led to the subsequent injury must be negligent or intentional misconduct before the causal chain is broken. *Id.* at 699.

In this instance, there is insufficient evidence to indicate Mr. Lee's subsequent dislocations were due to either negligence or willful misconduct on his part. His actions did not constitute a violation of any physical restrictions placed on his activities by Dr. Dyer; he had released Mr. Lee to return to full duty with no restrictions and ordered no additional treatment other than home exercises at the time of the first dislocation. In fact, there is nothing in the record to indicate Dr. Dyer has ever recommended any physical restrictions, despite repeated dislocations.

Furthermore, the Court finds the circumstances surrounding the subsequent dislocations do not rise to level of negligence or willful misconduct on the part of Mr. Lee. In the first instance, Dr. Dyer described the incident as "minor trauma." Furthermore, it appears it happened when a large dog jumped on Mr. Lee, and it is difficult to see how that would constitute negligence on Mr. Lee's part. The other incidents are similar in that the dislocations occurred after negligible actions on Mr. Lee's such as rolling over in bed or "swatting" at a dog. Given that Dr. Dyer had opined Mr. Lee had recovered from his shoulder injury by that point and Mr. Lee was under no physical restrictions, the Court finds none of those precipitating events constitutes negligence or willful misconduct.

Finally, Dr. Dyer did note in his April 28 record that compliance was an "issue,"

5

and he admonished Mr. Lee regarding the "need for compliance and exercises." However, there is nothing else in the record to note how Mr. Lee was non-compliant. As stated earlier, Dr. Dyer did not place any restrictions on Mr. Lee's physical activities. Mr. Lee completed physical therapy with no record of any compliance issues. When Dr. Dyer placed Mr. Lee at MMI, he noted Mr. Lee had almost full range of motion and good rotator cuff strength. As a result, the Court finds there is insufficient evidence to show Mr. Lee was non-compliant with Dr. Dyer's instructions, or if so, that his non-compliance caused his additional injuries or was sufficient to constitute negligence or willful misconduct sufficient to break the causal chain.

As a result, the Court holds Western Plastics is responsible for providing reasonable and necessary medical treatment, including revision surgery, for Mr. Lee's right shoulder as recommended by Dr. Dyer, his authorized treating physician. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A).

With regard to Mr. Lee's emergency room visits, Mr. Lee did not provide any evidence that he contacted Western Plastics or its adjuster before seeking emergent care. "Whether an employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case." *Hackney v. Integrity Staffing Solutions, Inc., et al.*, No. 2016-01-0091, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *9 (Tenn. Workers' Comp. App. Bd. July 22, 2016) (quoting *Dorris v. INA Ins. Co.*, 764 S.W.2d 538, 541 (Tenn. 1989). In addition, the Tennessee Supreme Court has held that when an employee receives medical care for a work-related injury that the employer did not authorize, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville*, 124 S.W.3d 93, 98 (Tenn. 2004).

In this instance, Mr. Lee did not provide any records regarding his visits to the emergency room to reduce his dislocations, nor did he provide any medical testimony regarding the reasonableness and necessity of such care. As a result, the Court holds there is insufficient evidence to find Mr. Lee is likely to prevail at a hearing on the merits regarding this issue at this time.

IT IS, THEREFORE, ORDERED that:

1. Western Plastics shall provide further care for Mr. Lee's work-related injury to his right shoulder on August 31, 2015, including revision surgery, as recommended by Dr. Dyer, his authorized physician.

2. Mr. Lee's request for payment of emergency room expenses incurred as a result of his repeated shoulder dislocations is denied at this time.

3. This matter is set for Initial Hearing on October 11, 2016, at 10:00 a.m. C.S.T.

6

**ENTERED THIS THE 8th DAY OF SEPTEMBER, 2016.**

Robert V. Durham, Judge
Court of Workers' Compensation Claims

**Initial Hearing:**

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 855-689-9049 to participate in the Initial Hearing.

Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing

7

fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Affidavit of Justin Lee
2. Medical records of Calvin Dyer, M.D.
3. Medical Bills for Emergency Room visits

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Western Plastic's Position Statement
5. Transfer Order
5. Docketing Notice

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 8th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Justin Lee | X | | X | 114 West Noel Avenue Madisonville, KY 42431 Jlee59305@gmail.com |
| J. Scott Hickman | | | X | SHickman@srvhlaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov