FILED

October 10, 2016

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time: 12:15 P.M.



TENNESSEE BUREAU OF WORKERS' COMPENSATION
IN THE COURT OF WORKERS' COMPENSATION CLAIMS
AT JACKSON

| | | |
|---|---|---|
| BRANDON BETHUNE,<br>Employee, | ) | Docket No.: 2015-07-0388 |
| | ) | |
| | ) | |
| v. | ) | |
| UNITED PARCEL SERVICE, INC.<br>Employer, | ) | State File No. 36204-2015 |
| | ) | |
| and | ) | |
| LIBERTY MUTUAL INSURANCE CO.,<br>Insurance Carrier. | ) | Judge Allen Phillips |

## COMPENSATION HEARING ORDER DENYING MEDICAL AND DISABILITY BENEFITS

This case came before the undersigned Workers' Compensation Judge on September 15, 2016, for a Compensation Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Bethune requests temporary total disability, permanent partial disability, and past and future medical benefits. United Parcel Service, Inc. (UPS) contends Mr. Bethune is not entitled to any of the requested benefits. The central legal issues are 1) whether Mr. Bethune established causation of his injury by a preponderance of the evidence and 2) whether he provided proper notice of his claim to UPS. For the reasons set forth below, the Court finds Mr. Bethune is not entitled to the requested benefits.

### History of Claim

Mr. Bethune is a forty-four-year-old resident of Henry County, Tennessee, who has worked for UPS for over twenty-six years. He was at all times relevant to this case a delivery driver. Mr. Bethune completed high school and two years of college.

1

Mr. Bethune admitted reporting eighteen prior workers' compensation injuries to UPS during his years of employment. UPS cross-examined Mr. Bethune regarding the nature of these claims, establishing that they ranged from injuries as minor as a bee sting to injuries serious enough to require surgery. In this case, Mr. Bethune alleged a torn meniscus in his right knee.

By affidavit, Mr. Bethune testified that, "on or about February 4, 2015, I was delivering a package for UPS at a residence when I slipped and fell." (Ex. 1 at 1.) He further stated that he injured both his right ankle and right knee in the fall. Mr. Bethune stated he "did not think it was a serious injury" but, "[a]s the pain in my right knee became worse, I started to limp more noticeably." *Id.* "When [his] injuries did not appear to be resolving, [he] sought treatment with Dr. Blake Chandler . . . on March 4, 2015." *Id.*

At the hearing, Mr. Bethune testified that, "I was hurt immediately, I believe the day after another girl on that same route was hurt." After talking with the other employee, he "figured things out" and determined he must have been hurt on February 4 because the other employee was hurt on February 3. When asked how "confident" he was of the date, he testified, "from talking with her that is the date."

Regarding the details of the fall, Mr. Bethune testified he was delivering a package when he noted a small retaining wall between him and the door to the house. He rounded the wall and stepped on a small paving stone that shifted, causing him to fall. He testified the package he carried landed nearby but that his "board," upon which he recorded deliveries, was thrown approximately twenty feet away.[1] His right ankle hurt immediately but, over the ensuing weeks, his right knee became worse. He continued to work but developed what he described as a noticeable limp.

On March 4, 2015, Dr. Chandler diagnosed a torn meniscus and recommended surgery. After surgery on April 8, 2015, Dr. Chandler took Mr. Bethune off work for six weeks. At the completion of his treatment, Dr. Chandler assessed a four percent permanent partial impairment to the body as a whole for residuals from the torn meniscus. (Ex. 3 at 21.)

Through Mr. Bethune's testimony at the hearing and at a previous deposition, UPS established that he could not recall the exact date, time, or location of where he fell. He did not recall the weather or exact conditions of the day he fell. He was unable to recall, that during his prior deposition testimony, he could not remember what part of his body he landed on when he fell. He still could not accurately define how he fell when testifying at the hearing. However, he did admit he knew at the time of the fall that his right knee was hurt. Mr. Bethune worked his full route on the day of the fall and missed

---

[1] When asked where his "board" landed, Mr. Bethune said, "about as far as those glass doors over there," referring to the entrance to the courtroom. The Court takes notice that the distance between the witness stand and the doors is approximately twenty feet.

2

no work until after his surgery by Dr. Chandler.

Following the fall, Mr. Bethune admitted he did not report his injury to any supervisor at UPS. Mr. Bethune felt that the "current group of UPS' supervisors" did not encourage the reporting of injuries. He also did not tell Dr. Chandler of the fall during the first visit, because as he described, he believed his symptoms might have related to "arthritis" because of a prior ACL injury.

Mr. Bethune testified he first told a supervisor of the fall on March 6, 2015, when he "reported the accident to . . . Kyle Parrish, the first chance I got after the MRI [of his knee]." He claimed Mr. Parrish told him UPS would likely deny the claim. Later, on the "Friday before his surgery," Mr. Parrish spoke to Russ Buffington, his direct supervisor. Mr. Buffington advised Mr. Bethune to follow with Mr. Parrish since he previously spoke to him. UPS cross-examined Mr. Bethune regarding his lack of memory regarding the details of his reporting to Mr. Parrish, including his uncertainty regarding both the time of his reporting and what he said. It pointed out his deposition testimony that he thought either not reporting, or delaying reporting of, a minor injury would be doing UPS "a favor."

Russ Buffington testified he is an on-road supervisor and has worked for UPS for twenty years. He explained that he would be the direct supervisor of drivers, including Mr. Bethune, and that Mr. Parrish is at the next level of management above him. He explained that UPS' policy is for employees to report injuries immediately so that the company might investigate the occurrence and provide prompt medical care. UPS emphasizes this injury reporting protocol to employees in meetings and the policy is "posted" in two conspicuous locations at the UPS facility at issue in this case. Mr. Buffington denied the "current group of supervisors" discouraged injury reports. He testified Mr. Bethune never directly reported an injury to him in February or March 2015, but did so in April 2015, just before his surgery. He neither saw Mr. Bethune limping during February or March 2015, nor was he told by others that Mr. Bethune was limping.

UPS offered into evidence the deposition of Kyle Parrish.[2] Mr. Parrish is the business manager of the UPS location where Mr. Bethune works and maintains the supervisory level above Mr. Buffington. Mr. Parrish himself once worked as an on-road supervisor and as a loader of UPS' "brown package cars." (Ex. 4 at 6-8.) He confirmed UPS' directive that all injuries are to be reported immediately to the employee's on-road supervisor. *Id.* at 10. When this reporting occurs, the on-road supervisor will "get them medical attention if it was something bad, something very serious." *Id.* Otherwise, the supervisor would "report it through an internal UPS reporting system . . . give the driver a form to select one of three physicians to go see," and "then that supervisor would

---

[2] UPS noted Mr. Parrish was "unavailable" as he was out of the country on vacation. Mr. Bethune agreed to admission of the deposition and, notably, it was his counsel who deposed Mr. Parrish for discovery purposes.

accompany the employee to go see that doctor." *Id.*

Mr. Parrish recalled Mr. Bethune coming to him, as described by Mr. Bethune's counsel in his deposition questioning, in "February [or] March of 2015." *Id.* at 17. Mr. Bethune stated "he thought he had been hurt at work roughly a month prior to that, and he wanted to report it," but Mr. Bethune did not recall the specific date of injury. *Id.* at 18. Mr. Bethune also told Mr. Parrish that he had sought care on his own, had an MRI, and was scheduled for surgery. *Id.* Mr. Parrish told Mr. Bethune, given "that time span," that he "needed to . . . ask questions of [UPS] health and safety group" as how to proceed. *Id.* "After getting feedback from health and safety," Mr. Parrish advised Mr. Bethune that he "could not deny him filing a workers' comp claim" but that he "would have to start over with our panel physician and follow our workers' comp process." *Id.* at 17-18. Mr. Bethune declined to do so. *Id.* at 18. At the hearing, Mr. Bethune agreed he declined to go through the UPS workers' compensation protocol because Dr. Chandler had already scheduled surgery at the time he reported the injury to Mr. Parrish, and he did not want to delay the procedure.

On March 4, 2015, at his first visit to him, Dr. Chandler noted his performance of right ACL reconstruction on Mr. Bethune in October 2008. (Ex. 3 at 9.) On March 4, Mr. Bethune gave a history of "increased pain and swelling in [the right knee] . . . that . . . had been going on for several weeks." *Id.* at 9. Dr. Chandler "thought he'd had a possible medial meniscal tear" and did not believe the previous ACL injury played any role in the torn meniscus. *Id* at 10, 12.

At the time of surgery to repair the meniscal tear, on April 8, 2015, Mr. Bethune did not report any injury to Dr. Chandler. *Id.* at 12. "At some point," Mr. Bethune did state he was, "at work when he was delivering a package and stepped on an unstable rock or a piece of concrete that rolled on him, and he twisted his ankle and his knee at that time." *Id.* at 13-14. Dr. Chandler "[did not] know exactly the date that [Mr. Bethune] first mentioned that to me, and I don't know— I don't recall off the top of my head exactly when that date was." *Id.* at 40. UPS confirmed on its cross-examination of Dr. Chandler that Mr. Bethune was "not precise" when reporting any history of injury. *Id.* at 41.

Dr. Chandler testified the type of injury reported by Mr. Bethune, "could've certainly resulted in a meniscus tear." *Id.* at 14. He also confirmed that other types of activities could cause a meniscal tear. *Id.* at 53. Dr. Chandler opined, relying upon the history given him by Mr. Bethune, that the injury was "more likely than not what led to the meniscus tear." *Id.* at 49. In response to a letter from Mr. Bethune's counsel dated January 4, 2016, Dr. Chandler responded to a question regarding whether the injury arose primarily out of the fall on February 4, 2015, and whether it contributed more than fifty-percent (50%) to the injury as follows: "YES, I believe the injury on 2/4/15 was directly responsible for the medial meniscal tear. If the injury occurred on 2/4/15, then it would explain why the 3/4/15 note indicates 'increased pain and swelling for several weeks.'"

4

*Id.* at ex. 7.

Dr. Chandler noted he previously treated Mr. Bethune. These included the 2008 ACL injury, that was non-work-related, and several other orthopedic problems such as a dislocated shoulder, a foot issue, epicondylitis, and a left knee problem. Some of these orthopedic issues were work-related and some were not. Likewise, some occurred at one specific time and some did not. *Id.* at 23-32.

Based upon this proof, Mr. Bethune argued that he gave proper notice of his injury, and that he established causation. He reported the injury to Mr. Parrish within thirty days, when taking into account the shortened month of February, satisfying the notice requirement. The only medical proof is Dr. Chandler's opinion that the injury is related and the "absence of a narrative explanation" in his records does not diminish it. Counsel admitted the outcome of the case "comes down to credibility."

UPS countered that Mr. Bethune's own actions would cause everyone to "leave [the hearing] with more questions." This long-time employee of UPS knew how to report injuries, particularly with his extensive prior claim history, but he did not report the injury. Regarding the injury itself, not only did he report late, but there were no witnesses. Mr. Bethune's actions lead to a question of "what really happened to this man?" The circumstances indicate that it did not happen.

### Findings of Fact and Conclusions of Law

#### *Standard Applied*

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). At this Compensation Hearing, Mr. Bethune must prove all essential elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6)(2014). In determining whether Mr. Bethune has proven all elements of his case by a preponderance of the evidence, this Court will not be remedially or liberally construe the Workers' Compensation Law in favor of either him or UPS but, shall construe it fairly, impartially, and in accordance with basic principles of statutory construction favoring neither party.

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Tenn. Code Ann. § 50-6-116 (2014).

*Causation*

Mr. Bethune must prove, by a preponderance of the evidence, that his alleged injury was caused by a specific incident or set of incidents arising primarily out of and in the course and scope of his employment, identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A)(2015). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B)(2014). The fifty percent or more contribution by the employment must be shown to a "reasonable degree of medical certainty" which means, in the opinion of a physician, that the employment "more likely than not" was the cause of the injury, when considering all causes, as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(C)(D)(2015).

Guided by this definition, the Court will analyze the evidence regarding each of the statutory requirements. When so doing, the Court finds Mr. Bethune has not proven, by a preponderance of the evidence, that he sustained an injury arising out of and in the course and scope of his employment with UPS.

First, the Court looks to whether Mr. Bethune has proven the occurrence of a specific incident or set of incidents identifiable by time and place of occurrence. In this regard, the Court finds the date of alleged injury is too questionable to accept its very occurrence. Mr. Bethune, in his sworn affidavit, does not describe a specific date of injury, but instead states, "on or about 2/4/15 . . . [he] slipped and fell." (Ex. 1 at 1.) Even if these words were meant only as a legal term of art, the Court finds the remainder of his proof equally equivocal. For instance, Mr. Bethune admitted in his direct testimony that he determined the February 4 date of injury after recalling a co-worker suffering an injury the day before. He stated, "I was hurt immediately, I believe the day after another girl on that same route was hurt" and, after talking with her, he "figured things out" and determined he must have been hurt on February 4 because she was hurt on February 3. When asked how "confident" he is of the date, he testified, "from talking with her, that is the date." This varies from his hearing testimony when he described a distinct event of slipping on a "flat stone" behind a retaining wall and falling to the ground, a very specific and traumatic event, and one not easily forgettable.

Second, Mr. Bethune's description of his injury cloaks his claim in a shroud of suspicion too burdensome for this Court to ignore. Mr. Bethune claims worsening symptoms in his right knee caused him to limp "more noticeably," yet no one at UPS observed this limitation. Moreover, he continued regular duty for one month before seeking medical care on his own and, when he did seek medical attention from Dr. Chandler, the history was "increased pain and swelling" in the knee that "had been going

6

on for several weeks." (Ex. 3 at 9.) Mr. Bethune provided no history of injury and no description of the alleged occurrence. Dr. Chandler candidly admitted on cross-examination that he did not "know exactly the date that [Mr. Bethune] first mentioned [the alleged injury to him and he did not] recall off the top of my head exactly when that date was." *Id.* at 40. These inconsistencies are too great for this Court to ignore. *See Perrault v. Gem Care, Inc.*, No. 2015-02-0210, 2015 TN Wrk. Comp. App. Bd. LEXIS 43, at *8 (Tenn. Workers' Comp. App. Bd. Nov. 12, 2015) (Board noted the trial court's determination that, "several inconsistencies between Employee's testimony and the recorded histories as reflected in the medical records . . . are too significant to ignore.").

Third, and most importantly, Mr. Bethune reported eighteen prior workers' compensation injuries to UPS during his twenty-five-year tenure. These reports included injuries as minor as a bee sting to those serious enough to require surgery. Also, as pointed out in UPS' cross-examination of Dr. Chandler, Mr. Bethune reported several specific, traumatic events to Dr. Chandler in the past. *See* Ex. 3 at 23 to 32. Because some of these were work-related and some were not, Mr. Bethune demonstrated an ability to distinguish between work-related injuries and non-work-related injuries. He also demonstrated he knew how to provide an accurate history of a work-related injury.

Finally, the Court does not find credible Mr. Bethune's assertion that he delayed reporting the fall because he did not "think it was a serious injury." A reasonable person with his claim history would not find the alleged fall "on or about February 4, 2015" less deserving of immediate reporting than a bee sting. The Court dismisses any assertion that Mr. Bethune somehow thought he was "doing UPS a favor" by not reporting the injury. Again, eighteen prior claims militate against fear of hurting the company or of bringing discord to the employment relationship. Taken in its totality, the evidence is too questionable for this Court to accept Mr. Bethune's version of the events and it finds he has not proven an incident identifiable by time and place of occurrence. *See Stanley v. Walmart, Inc.*, No. 2015-05-0025, 2015 TN Wrk. Comp. App. Bd. LEXIS 17 (Tenn. Workers' Comp. App. Bd. June 26, 2015) (Board adopted trial court's determination that the employee's allegations did "not present sufficient detail to present a prima facie case for an injury by accident.").

Beyond no specific incident, the Court finds Mr. Bethune did not establish, by "a reasonable degree of medical certainty," an injury that arose primarily out of his employment at UPS. Dr. Chandler testified that meniscal tears are "routinely" caused by "twisting-type injuries" and, with "that history he related to me, that *could've* certainly resulted in a meniscal tear." (Ex. 3 at 14)(Emphasis added). As stated, an injury must arise primarily out of the employment; medical testimony that an injury "could have" resulted from the employment when coupled with lay proof is no longer sufficient. *See, e.g., Tindall v. Waring Park*, 725 S.W.2d 935, 937 (Tenn. 1987). Moreover, the Court notes Tennessee authority to the effect that an inaccurate history does not support a finding of causation. In *Hamilton v. Danka*, No. 02S01-9806-CH-00051, 1999 Tenn.

7

LEXIS 398 (Tenn. Workers' Comp. Panel July 30, 1999), the court determined an opinion based upon a faulty hypothetical as to the extent of repetitive use of the hands could not form the basis of a valid causation opinion. Similarly, in *UPS v. Cameron*, No. E2013-02001-SC-R3-WC, 2014 Tenn. LEXIS 609 (Tenn. Workers' Comp. Panel Aug. 15, 2014), the panel affirmed a trial court that had given greater weight to treating physicians as opposed to evaluating physicians who "relied on [an] inaccurate medical history provided by the employee." *Id.* at *16. Interestingly, in that case, the trial court found the employee's credibility "suspect." *Id.* at 14. Similarly, this Court has found Mr. Bethune's credibility suspect. Based upon a thorough review of the proof in this case, the Court holds Mr. Bethune has failed to prove by a preponderance of the evidence that he sustained a compensable injury.

### Notice

The Court also finds any notice given by Mr. Bethune was insufficient.

Tennessee Code Annotated section 50-6-201(a)(2015) requires "every injured employee" to "immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable," to provide written notice of an injury to an employer who does not have actual notice. If the employee fails to do so within thirty days, "no compensation shall be payable." *Id.* The notice must "state in plain and simple language . . . the time, place, nature, and cause of the accident resulting in injury." Tenn. Code Ann. § 50-6-201(a)(2)(2015). Our Appeals Board explains the reason for the notice requirement as follows:

> The notice requirement contained in section 50-6-201 exists so that an employer will have an opportunity to make a timely investigation of the facts while still readily accessible, and to enable the employer to provide timely and proper treatment for an injured employee. Consequently, the giving of statutory notice to the employer is an absolute prerequisite to the right of an employee to recover compensation under the workers' compensation law. When lack of notice is raised as a defense, the burden is on the employee to show that notice was given, the employer had actual notice, or the failure to give notice was reasonable under the circumstances.

*Hosford v. Red Rover Preschool*, No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014).

Guided by this authority, the Court notes the parties agree Mr. Bethune first reported an alleged injury to Mr. Parrish on March 6, 2015, approximately thirty days after its occurrence. This notice was not in writing and UPS certainly had no actual notice of the alleged event of February 4, 2015. The Court also reiterates its findings regarding causation and, for those same reasons, questions the very occurrence of the event for

8

purposes of notice. Particularly, the Court cannot excuse any late reporting by an employee who had reported eighteen prior claims. There is nothing reasonable about reporting an injury as late as Mr. Bethune reported this injury and certainly not after already seeking medical treatment on his own.

As noted above, one of the primary reasons for the notice requirement is to allow timely investigation of the facts. Given the late and questionable reporting, UPS could not have performed an investigation, and the Court finds it was prejudiced by the inability to do so. Further, another stated purpose of the notice requirement is to allow an employer to provide timely and proper medical treatment. In *Hackney v. Integrity Staffing Solutions, Inc.,* No. 2016-01-0091, 2016 TN Wrk Comp App Bd LEXIS 29 (Tenn. Work. Comp. App. Bd. July 22, 2016), our Appeals Board stated, *"the employer must first be given an opportunity to provide the treatment,* and "[w]hether an employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case." *Id.* at *9 (Emphasis added). Further, the Tennessee Supreme Court has said, an "employee [should] do no less than to consult [the] employer before incurring expenses called for by the statute if the employee expects the employer to pay for them." *Dorris v. INA Ins. Co.,* 764 S.W.2d 538, 541 (Tenn. 1989).

Here, Mr. Bethune never gave UPS the opportunity to provide treatment. Even after being told it would process his late-filed claim, Mr. Bethune still refused to accept medical benefits from UPS, opting instead to continue with unauthorized surgery with Dr. Chandler. Under these circumstances, the Court holds Mr. Bethune cannot recover medical benefits because of his refusal to accept UPS' offer to provide benefits.

*Conclusion*

Based upon the evidence submitted, the Court holds Mr. Bethune neither proved causation of his alleged injury nor gave proper notice. Because of these findings regarding causation and notice, the Court need not address the remaining issues of entitlement to medical and temporary benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Bethune's claim against UPS is denied in its entirety and dismissed with prejudice.

2. Costs of this cause of $150.00 are assessed against UPS pursuant to Tenn. Comp. R. and Regs. 0800-02-21-.07 (2015), to be paid within five days of this order becoming final. **In addition, UPS shall prepare and submit the SD-1 for this matter within ten days of the date of entry of this order.**

9

**ENTERED** this the 10th day of October, 2016.

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the

10

appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be "final" (see Tennessee Code Annotated section 50-6-239(c)(7) (2015)) and you must comply with the Tennessee Rules of Appellate Procedure.**

# APPENDIX

Exhibits:
1. Affidavit of Brandon Bethune;
2. "Patient Information Form" of West Tennessee Bone & Joint Clinic (Dr. Chandler);
3. Deposition of Dr. John Chandler; and,
4. Deposition of Kyle Parrish.

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Initial Hearing Order;
4. Second Amended Initial Hearing Order;
5. "Pre Compensation Hearing Statement;" and
6. "Pre-Hearing Brief of Employer and Carrier."[4]

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 10th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Adam H. Johnson, Esq. Employee's Counsel | | | X | ajohnson@nstlaw.com |
| David T. Hooper, Esq. Employer's Counsel | | | X | dhooper@hooperzinn.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

13