**Billy Joe DORRIS, Plaintiff–Appellee,**

v.

**INA INSURANCE COMPANY, Defendant–Appellant.**

Supreme Court of Tennessee, at Jackson.

Jan. 23, 1989.

Steven B. Crain, Menzies, Rainey, Kizer, and Alderson, Jackson, for defendant-appellant.

David Hardee, Hardee and Martin, P.A., Jackson, for plaintiff-appellee.

## OPINION

FONES, Justice.

This workers' compensation appeal presents three issues for review: (1) whether plaintiff's claim is barred by the defense of misrepresentation of physical condition in his application for employment; (2) whether the compensation insurer (INA) is liable for medical expenses incurred for care provided by a non-designated physician; and (3) whether plaintiff met his burden of proof in establishing the permanency of his injury by medical testimony?

The trial court determined that plaintiff, Billy Joe Dorris, had suffered permanent partial disability of 55% to the body as a whole. In addition, the trial court held defendant, INA Insurance Company, who was the insurance carried for employer, Jackson Wood Products, liable for the unauthorized medical expenses. Defendant appeals. We affirm in part and reverse in part.

Plaintiff, at time of trial, was 37 years of age. He attended special education classes up until he quit going to school at age 14 or 15. Prior to being hired by Jackson Wood

Products, plaintiff's work record consisted of common labor employment.

In 1986, plaintiff was employed by Jackson Wood Products to shovel wood chips into a boiler and to shovel and mop the water off the floor. Each scoopful of wood weighed between 30 to 40 pounds wet, somewhat lighter when dry. On 29 December 1986, plaintiff was shoveling wood during the course and scope of his employment when he experienced a grinding pain in his back. Plaintiff was taken to Jackson Clinic by employer and treated by Dr. Lane. Subsequently, Dr. Lane referred plaintiff to Dr. Warmbrod, who eventually hospitalized plaintiff for testing. Plaintiff testified that he told Dr. Warmbrod that he was dissatisfied with the way he felt and that he was going to another doctor when he got out of the hospital.

On 27 February 1987, plaintiff went to see Dr. Barnett at the suggestion of his attorney. Dr. Barnett hospitalized plaintiff and treated him with medications and a back brace. Dr. Barnett released plaintiff in June 1987.

The accident occurred on 29 December 1986. Thus our standard of review in this case is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e).

Defendant contends that plaintiff misrepresented his physical condition in his application for employment, thus barring his claim for workers' compensation benefits. The record reflects that on plaintiff's application for employment dated 16 October 1986, and signed by plaintiff, he responded "no" to the question, "Do you have any physical condition which may limit your ability to perform the job applied for?". At trial, employer presented an employee record dated 17 October 1986, which was filled out by the secretary of Jackson Wood Products, but not signed by plaintiff. A response of no was written to the question, "Have you received compensation from back injury or other cause?".

Plaintiff testified at trial that he had been in a car accident in 1973 and was treated by Dr. Robert Barnett. Dr. Barnett testified that he treated plaintiff in 1973 for some lacerations about the face and for low back pain. He treated plaintiff for these injuries within a one month period and released him with no permanent disability. Dr. Barnett did not see plaintiff again until February 1987.

In order for a false statement in an employment application to bar recovery of benefits, the following factors must be present: (1) employee must have knowingly and willfully made a false representation as to his physical condition; (2) the false representation must have been relied upon by the employer as a substantial factor in the hiring; and (3) a causal connection must exist between the false representation and the injury. *Federal Copper & Aluminum Co. v. Dickey*, 493 S.W.2d 463, 465 (Tenn.1973). We are in agreement with the chancellor that the evidence does not preponderate against the finding that plaintiff did not knowingly and willfully misrepresent his physical condition. The proof shows that plaintiff functioned within the mild range of mental retardation. He did not fill out the employee record, but answered questions asked to him by employer's secretary. In regard to the 16 October 1986, employment application, we find that plaintiff did answer truthfully to the question that he did not have any physical condition which would limit his ability to perform his job. The evidence shows that since 1973, plaintiff had worked hard labor with no back trouble. *See Quaker Oaks Co. v. Smith*, 574 S.W.2d 45 (Tenn. 1978). Since the defendant has failed to satisfy the first of a three prong test, we find this argument is without merit.

Defendant argues that the trial court erred in holding employer liable for the medical expenses that plaintiff incurred while under the care of Dr. Barnett, a non-designated physician. T.C.A. § 50–6–204(a)(4) requires the employer to furnish medical services to the injured employee, and in providing the same, to give the employee the statutory privilege of choosing from at least three physicians. The employee also has a statutory duty to

accept the medical services provided by the employer. T.C.A. § 50–6–204(a)(6). We have refused to hold that in every instance the failure of the employer to provide a panel of doctors renders the employer liable for expenses for doctors chosen by the employee. *Harris v. Kroger Co.,* 567 S.W. 2d 161, 163 (Tenn.1978).

Whether an employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case. *Id.* In the case *sub judice,* it is undisputed that the defendant failed to provide plaintiff with a panel of physicians, but instead took him directly to the Jackson Clinic for treatment. Plaintiff accepted these services and was treated by Dr. Lane and Dr. Warmbrod until plaintiff's lawyer set up the arrangement for him to see Dr. Robert Barnett. After plaintiff's visit with Dr. Barnett in February 1987, plaintiff returned once again to visit Dr. Warmbrod on 6 March 1987. Plaintiff did not notify Jackson Wood Products that he was dissatisfied with the doctor which the company recommended. The record does not reflect any reasonable excuse or justification for plaintiff unilaterally seeking additional medical services.

The excuse urged by plaintiff and expressly endorsed by the trial judge, plaintiff's limited mental capacity, is illogical in the circumstances of this case. It is uncontradicted that plaintiff went to Dr. Barnett upon the express advice of his lawyer, not as a result of his independent judgment. His lawyer's advice conflicts with this Court's opinion in *Buchanan v. Mission Insurance Co.,* 713 S.W.2d 654 (Tenn. 1986)[1] and plaintiff cannot escape responsibility for following that advice. In addition, we do not agree that the testimony of Dr. Lorne Semrau, a clinical psychologist, with regard to plaintiff's mental capacity would justify excusing him from the obligation to notify his employer that he was dissatisfied with the doctor, to whom he had been referred.

It has long been held that the intent of T.C.A. § 50–6–204 is for the employee to do no less than to consult his employer before incurring expenses called for by the statute if the employee expects the employer to pay for them. *Procter & Gamble Defense Corp. v. West,* 203 Tenn. 138, 310 S.W.2d 175, 178 (1958). We find the facts of this case similar to the facts in *Buchanan.* In *Buchanan* we held that the employer was not obligated under the workers' compensation statute to pay for medical care provided to employee by a non-designated physician, where employee did not notify employer of dissatisfaction with the designated physician, even though employer did not comply with the requirements of T.C.A. § 50–6–204(a)(4) of furnishing employee with a list of three designated physicians to choose from for medical treatment of work-related injuries. *Id.* at 657–58.

Therefore we reverse the chancery court and hold defendant not liable for the medical expenses incurred by plaintiff for the care provided by Dr. Robert Barnett, a non-designated physician.

 Next, defendant argues that plaintiff failed to meet his burden of proof in establishing the permanency of his injury by medical testimony. In workers' compensation cases permanency must be shown in all but the most obvious cases by expert medical evidence. *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452 (Tenn. 1988). Dr. Robert Barnett testified that he treated plaintiff on 27 February 1987, and found plaintiff to have a spondylolisthesis aggravated by his work injury. When asked whether he had an opinion as to the cause of plaintiff's injury, Barnett responded that "it [the episode of shoveling wood] was the precipitating cause of his present symptomatology superimposed on his pre-existing spondylolisthesis." Barnett felt that plaintiff had reached maximum improvement on 17 June 1987, with a permanent physical impairment of 15% to the body as a whole, according to the AMA guidelines.

---

1. *Buchanan* was released 14 July 1986. Plaintiff was seen for the first time by Dr. Barnett for the injury involved in this case on 27 February 1987.

Dr. Warmbrod testified, however, that he was of the opinion that plaintiff had a spondylolysis and did not suffer any permanent physical impairment. The chancellor had to choose from conflicting opinions expressed by medical experts. It is within the discretion of the trial court to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation in view of the known facts. *Combustion Engineering Inc. v. Kennedy*, 562 S.W.2d 202, 204 (Tenn.1978). Thus, it was within the chancellor's discretion to conclude the testimony of Dr. Robert Barnett was more persuasive than that of Dr. Warmbrod.

In addition, Dr. Lorne Semrau, a clinical psychologist, performed vocations assessments and evaluations on plaintiff and found him to be functionally illiterate, mildly mentally retarded with organic brain syndrome. Dr. Semrau testified that plaintiff would be vocationally capable of performing 20% to 23% of the jobs within the national economy, but 30% to 50% of those jobs would be eliminated if plaintiff was restricted in bending, stooping, walking, sitting and kneeling. Dr. Robert Barnett testified that plaintiff should not be employed in jobs which require frequent lifting, bending or those that require sitting for long periods of time.

We find that plaintiff established permanency and causation of his injury based upon the testimony of Dr. Robert Barnett, a competent medical expert, and the chancellor's finding of permanent partial disability of 55% to the body as a whole is supported by the lay testimony and other evidence as well as the medical evidence. *See Kellwood Co. v. Gibson*, 581 S.W.2d 645 (Tenn.1979).

The judgment of the chancery court is reversed in part and affirmed in part. Costs are adjudged against defendant.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.