FILED

March 27, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 4:17 PM



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Thomas Lane, | ) | Docket No.: 2016-01-0716 |
| Employee, | ) | |
| v. | ) | |
| Cleveland Utilities, | ) | State File No.: 95703-2015 |
| Employer, | ) | |
| And | ) | |
| Distributors Self Insurance Fund, | ) | Judge Thomas Wyatt |
| Insurance Company. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on March 23, 2017, for an in-person Expedited Hearing during which Thomas Lane sought medical benefits for past and ongoing treatment of a November 20, 2015 spinal injury at Cleveland Utilities. Because he also suffered a 2007 spinal injury at Cleveland Utilities, the central legal issue here is whether Mr. Lane's need for spinal treatment after the 2015 work injury arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court holds that it did and consequently Mr. Lane is entitled to the relief he requested.

### History of Claim

Mr. Lane is a fifty-seven year old maintenance technician who resides in Cleveland, Bradley County, Tennessee. He alleged he injured his spine on November 20, 2015, while strenuously pulling a jack to dislodge it from beneath a pallet loaded with chemicals. Mr. Lane reported his injury the next day via telephone call to John Corum, Cleveland Utilities' safety manager. Mr. Lane testified Mr. Corum told him to go to Doctor's Express, a walk-in clinic, for treatment. Mr. Lane did not go to the walk-in clinic immediately, but waited until November 23 before seeking treatment.

Mr. Lane saw Dr. Charles Rudolph at Doctor's Express. Dr. Rudolph's initial treatment note indicated Mr. Lane reported back pain from a work injury, and noted that

1

he was currently taking two prescribed narcotic pain medications. Dr. Rudolph diagnosed Mr. Lane with left-sided sciatica and ordered two injections of pain medication. Mr. Lane testified that Dr. Rudolph would not clear him to return to work until he returned for a follow-up appointment a week later.

After leaving Doctor's Express, Mr. Lane went to Cleveland Utilities to report what happened at the visit with Dr. Rudolph. Mr. Lane met with a secretary, Deanna (Norman) Hitch, who presented a panel form for his signature. (Ex. 3.) The form listed Doctor's Express as a treatment option along with four other facilities. Somebody wrote "Dr. Rudolph" on the line designated to identify the selected treating physician. Mr. Lane signed the form as presented to him.

When Mr. Lane followed up at Doctor's Express on November 30, he saw Dr. Victoria Folsom instead of Dr. Rudolph. Dr. Folsom also diagnosed sciatica, but instructed Mr. Lane to seek treatment from his primary care physician "for pre existing injury unrelated to current work injury claim." (Ex. 6 at 4.). In response to correspondence from the handling adjuster, Dr. Folsom stated, "[a]s noted in Dr. Rudolph's note from 11/23/15[1], this was sciatic pain worsened but not caused by the work." *Id.* at 6.

Cleveland Utilities denied Mr. Lane's claim based on Dr. Folsom's causation opinion. Mr. Lane had a standing appointment with Dr. Paul Broadstone, the orthopedic surgeon authorized to treat the 2007 spinal injury for which Mr. Lane retained open medical benefits under a court-approved settlement.[2] Mr. Lane saw Dr. Broadstone on December 2, during which visit Dr. Broadstone noted that Mr. Lane,

> continues to have pain in the lower lumbar spine and RLE with N/T and weakness. He still experiences numbness in the anterior aspect of his left leg as well. He relates these symptoms are unchanged since the last visit.

Later in the report, Dr. Broadstone noted that Mr. Lane,

> has had a recent exacerbation of his back and left leg symptoms which somewhat improved over the last week. It is a separate or worker's compensation issue and not addressed here.

(Ex. 8 at 1, 2.)

Because of Dr. Broadstone's reluctance to address issues not related to his 2007 work injury, Mr. Lane saw neurologist Dr. David Lowry on January 5, 2016. In the in-

---

[1] The records introduced into evidence do not contain the opinion from Dr. Rudolph referenced by Dr. Folsom.

[2] The same carrier covered the 2007 and 2015 injuries.

2

take records he completed before seeing Dr. Lowry, Mr. Lane stated he injured his back "at work trying to get a pallet jack from a chemical pallet." (Ex. 7 at 9.) Later, Dr. Lowry noted Mr. Lane told him the injury occurred November 20, 2015. *Id.* at 6. Dr. Lowry ordered an MRI, but did not arrive at a definitive opinion whether Mr. Lane's current lumbar symptoms arose from the 2007 injury or the 2015 injury.

Eventually, Dr. Broadstone agreed to see Mr. Lane as a private patient for the 2015 injury. Dr. Broadstone saw Mr. Lane on April 11, 2016, at which visit he recorded that Mr. Lane told him the onset of his current symptoms occurred on November 20, 2015, when,

> there was a pallet jack stuck beneath a pallet . . . he attempted to pull the jack out, but it was stuck, he continued to try to pull the jack. He stated he noted a tingling sensation in his lower lumbar spine but only for a brief period of time . . . but later that night he began to experience pain in the left buttock, posterior thigh ending at the knee.

(Ex. 8 at 4.)

Dr. Broadstone ordered an MRI to compare to the MRI ordered by Dr. Lowry. After reviewing the MRI findings, Dr. Broadstone diagnosed Mr. Lane with mild to moderate degenerative disc and facet disease and disc bulging at the L2-3, L3-4, L4-5 and L5-S1 levels of his spine. An EMG/nerve conduction study performed in August 2016 documented findings consistent with ongoing left-sided radiculopathy at the L4-5 level.

Based on these findings, Dr. Broadstone recommended against surgery, but suggested that Mr. Lane may need physical therapy and epidural injections to manage the numbness in his left leg. Dr. Broadstone ordered an epidural injection that Mr. Lane underwent on May 12.

Mr. Lane presented Dr. Broadstone two identical written causation questionnaires to obtain his causation opinion. In his first response, Dr. Broadstone stated that Mr. Lane had experienced additional left-leg numbness and left-buttocks pain since his injury at Cleveland Utilities. He gave the opinion that the injury at Cleveland Utilities caused an "exacerbation of [the] previous excising condition [at the L4-5 level]." (Ex. 8 at 11.)

Dr. Broadstone later ordered an MRI of Mr. Lane's lumbar spine and compared it to the MRI Dr. Lowry ordered to evaluate whether the work injury caused an increased bulge in Mr. Lane's L4-5 disk. Upon completing his review of the MRIs, Dr. Broadstone supplemented his earlier response by stating that the later MRI did not show a larger L4-5 disk bulge since the work injury. Nevertheless, he still found that Mr. Lane suffered increased left leg pain, numbness and tingling following the 2015 injury and, thus,

3

maintained his opinion that Mr. Lane's 2015 injury at Cleveland Utilities caused an "aggravation of the pre-existing condition at the [L4-5 level]." *Id.* at 12.

Mr. Lane filed a Petition for Disability Determination after Cleveland Utilities denied his claim. After mediation failed to resolve the parties' issues, the mediator issued a Dispute Certification Notice certifying the issues of causation and medical benefits for the Court's decision. Mr. Lane then requested an in-person Expedited Hearing before the Court.

## Findings of Fact and Conclusions of Law

In order to grant the relief Mr. Lane seeks, the Court applies the following general principles. As in all workers' compensation actions, Mr. Lane, as the claimant, has the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 *(Aug. 18, 2015).* However, since this is an Expedited Hearing, he only has to come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits in order to meet his burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 *(Mar. 27, 2015).*

The Court considers the following statutory definitions in deciding the causation issue raised by the parties. Tennessee Code Annotated section 50-6-102(14) (2016) defines a compensable "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment." Subsection (A) to section 50-6-102(14) specifically addresses the compensability of injuries that aggravate pre-existing conditions, providing that such injuries are not compensable "unless it can be shown that the aggravation arose primarily out of and in the course and scope of employment." The statute also provides that "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

The parties here submitted the opinions of Drs. Folsom and Broadstone for the Court to consider on the causation issue.[3] When thoroughly considered, their opinions do not greatly differ. Dr. Folsom's opinion is that Mr. Lane's injury at Cleveland Utilities worsened, but did not cause, the sciatic pain for which he sought treatment. Upon finding

---

[3] While the Court is troubled that Dr. Folsom took it upon herself to become the ultimate decision-maker by instructing Mr. Lane to seek treatment from his primary care physician, the Court will nonetheless consider her opinion on the causation issue. *See City of Columbia v. C.F.W. Construction Co.,* 557 S.W.2d 734, 742 (Tenn. 1977), holding that an expert opinion that addresses the ultimate legal issue in a claim may be considered by the judge if the opinion is within the expert's field of expertise and is helpful to the Court's determination of the ultimate issue.

4

that Mr. Lane experienced increased numbness in his left leg and severe pain in his left buttocks because of his injury at Cleveland Utilities, Dr. Broadstone formulated the opinion that the work injury aggravated the pre-existing condition at the L4-5 level of Mr. Lane's spine.

The question then becomes whether the opinions of Drs. Folsom and Broadstone establish that Mr. Lane will likely prevail at a hearing on the merits that the 2015 injury he sustained at Cleveland Utilities arose out of and in the course and scope of employment. In considering this issue, the Court is mindful of the decisions of the Workers' Compensation Appeals Board in two claims involving aggravations of pre-existing conditions.

The first opinion considered is that in *Miller v. Lowe's Home Centers, Inc.* , 2015 TN Wrk. Comp. App. Bd. LEXIS 40. ( Oct. 21, 2015), in which the employee fell at work injuring his hip. The evidence in *Miller* established that radiological testing indicated the presence of severe pre-existing arthritic changes in the employee's injured hip before the fall at work occurred. The employer denied hip replacement surgery prescribed by the treating physician on the ground it was not liable for the preexisting arthritis in the hip. The workers' compensation judge ordered that the employer pay for the recommended hip replacement surgery.

The Workers' Compensation Appeals Board in *Miller* affirmed the trial court's decision. In support of its ruling, the Appeals Board held the trial judge properly accepted the treating physician's testimony that the work injury aggravated the severe arthritis in the employee's hip. Furthermore, the Appeals Board held the treating physician's testimony the employee would have needed hip replacement irrespective of the occurrence of the work injury did not mandate a finding of non-compensability since the physician also testified the work injury hastened the need for the surgery. Finally, the Appeals Board in *Miller* held that an aggravation or exacerbation of a pre-existing condition need not be permanent for an injured worker to qualify for medical treatment of the aggravation under workers' compensation.

The second opinion considered is *White v. Boles Trucking*, 2016 TN Wrk. Comp. App. Bd. LEXIS 86, at *7-8 (Nov. 14, 2016). The issue in *White* was whether new symptoms experienced by an employee following a 2015 work injury related to the 2015 incident or a pre-existing compensable injury to the same level of his lumbar spine. The Appeals Board affirmed the trial court's finding that the employee suffered a new injury, noting the following factors in support of its decision: the employer did not dispute the employee's description of his 2015 work injury; the employee was working without restriction before the 2015 injury occurred; the employee became restricted in his work activities eafter the work injury occurred; and the employer did not refute the employee's report of more severe pain after the 2015 injury.

5

The Appeals Board in *White* further decided that the lack of radiological evidence supporting a finding that the 2015 injury caused an anatomical change to the employee's pre-existing lumbar condition did not mandate a reversal of the trial court's decision. In support of this decision, the Appeals Board cited the treating physician's testimony that the 2015 injury exacerbated the pre-existing condition to the extent the employee currently needed the recommended surgery.

Here, the Court notes Cleveland Utilities did not dispute that Mr. Lane suffered injury at work on November 20, 2015, as he described. Furthermore, the evidence introduced during the Expedited Hearing established that, following his 2007 lumbar injury, Mr. Lane successfully returned to the strenuous work of a maintenance technician without restriction, and performed the duties Cleveland Utilities assigned him until the 2015 injury intervened.[4] Mr. Lane testified he attempted to return to work following the 2015 injury, but could not perform his assigned duties because of the symptoms that developed after the 2015 injury occurred. In fact, Mr. Lane began receiving long-term and Social Security disability benefits following the 2015 injury. Finally, the record indicates that, since the 2015 injury, Mr. Lane has required treatment by epidural steroid injections that he did not require before the injury occurred.

Taking the above factors into account, the Court holds the evidence introduced at the Expedited Hearing established Mr. Lane is likely to prevail at trial in establishing his need for lumbar spinal treatment since the occurrence of the 2015 work injury arose primarily out of and in the course and scope of his employment at Cleveland Utilities. In consideration of the medical benefits to which this holding entitles Mr. Lane, the Court considers the Workers' Compensation Appeals Board's opinion in *Hackney v. Integrity Staffing Solutions, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2106), which held,

> An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A) [*9] . *See Young v. Young Electric Co.,* No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (Tenn. Workers' Comp. App. Bd. May 25, 2016); *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, the employer must first be given an opportunity to provide the treatment, and "[w]hether an

---

[4] Cleveland Utilities did point out that Dr. Broadstone noted in the first visit on which he saw Mr. Lane after the 2015 injury that Mr. Lane's symptoms were the same as he described them at previous visits. However, after he saw Mr. Lane on additional occasions following the 2015 injury, Dr. Broadstone stated in his August 3, 2016 responses to Mr. Lane's written causation inquiry that Mr. Lane did experience increased left-leg symptoms, including pain, numbness and tingling, following the 2015 injury.

6

employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case." *Dorris v. INA Ins. Co.,* 764 S.W.2d 538, 541 (Tenn. 1989).

Here, Mr. Lane gave Cleveland Utilities timely notice of his injury and sought care at the facility to which the employer's safety director directed him. After two visits to the authorized facility, however, Cleveland Utilities and/or its Carrier interpreted a causation opinion rendered by a physician at the authorized provider to provide it a valid basis to deny Mr. Lane's claim. Mr. Lane testified without refutation that, after Cleveland Utilities denied his claim, he told them he needed care for his 2015 injury and intended to seek treatment from Dr. Broadstone. However, someone from Cleveland Utilities or its Carrier told Mr. Lane workers' compensation would not pay for him to see Dr. Broadstone for treatment. In view of the above, the Court holds that, at a hearing on the merits, Mr, Lane will likely prevail in establishing he was justified in seeking care for his 2015 back injury from Drs. Lowry and Broadstone following Cleveland Utilities' denial of his claim.

Mr. Lane seeks recovery for the treatment and evaluation he received from Drs. Lowry and Broadstone after the November 2015 injury, as well as for ongoing treatment under Dr. Broadstone as his authorized treating physician. The court first addresses the claim for payment of the existing bills relating to the treatment and evaluation he received from Drs. Lowry and Broadstone. In *Young v. Young Electric Co., supra* at *20, the Workers' Compensation Appeals Board modified an award of medical benefits to exclude payment for certain services ordered paid below. The Appeals Board excluded the charges in question because the medical records introduced into evidence below indicated the employee did not claim the underlying treatment was for a work injury. Here, the records of Drs. Lowry and Broadstone contain histories that indicate Mr. Lane claimed treatment for pain and symptoms from his November 20, 2015 work injury at Cleveland Utilities. Accordingly, the Court holds that, at trial, Mr. Lane will likely prevail in establishing that the treatment and evaluation he received from Drs. Lowry and Broadstone after November 20, 2015, arose primarily out of and in the course and scope of his employment by Cleveland Utilities.

Because the evidence introduced at trial does not establish the amounts the providers charged for the treatment and evaluation provided and ordered by Drs. Lowry and Broadstone, the Court cannot order Cleveland Utilities to pay the specific charges for those services. *See Osborne v. Beacon Transport, LLC,* 2016 TN Wrk. Comp. App. Bd. 49, at *9-10 (Sept. 27, 2016), holding that a party must admit evidence establishing the amounts charged for non-authorized treatment of a compensable injury before a court can order an employer to pay for the subject treatment. Accordingly, Mr. Lane must submit billing records that document the amounts charged by the providers of the compensable services so that Cleveland Utilities and/or its Carrier can process them for eventual

payment under the Workers' Compensation Law.

**IT IS, THEREFORE, ORDERED** as follows:

1. That Cleveland Utilities and/or its Carrier shall process the charges for the compensable treatment and evaluation of Mr. Lane's November 2015 work injury, but not until Mr. Lane and/or the providers of the subject services presents the charges to Cleveland Utilities and/or its Carrier by appropriate billing records.

2. That Cleveland Utilities and/or its Carrier shall authorize Dr. Paul Broadstone to provide ongoing reasonable and necessary treatment of Mr. Lane's November 20, 2015 work injury.

3. This matter is set for a Status Hearing on June 2, 2017, at 10:30 a.m., Eastern Time. You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 27th day of March, 2017.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

8

# APPENDIX

<u>Exhibits:</u>

The Court admitted the following exhibits into evidence:

1. First Report of Injury;
2. Wage Statement;
3. Agreement Between Employer/Employee Choice of Physician form;
4. Job description;
5. Final Medical Report of Dr. Paul Broadstone;
6. Records of Doctors Express/Drs. Charles Rudolph and Victoria Folsom;
7. Records of Chattanooga Bone & Joint Surgeons, PC/Dr. David Lowry;
8. Records of Dr. Paul Broadstone;
9. Affidavit of Thomas Lane; and
10. Judgment of the Circuit Court of Bradley County, Tennessee (over the objection of Cleveland Utilities).

<u>Technical record:</u>

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Employee Position Statement; and
5. Employer Position Statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of March, 2017.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| Matthew Coleman, Attorney | | X | mcoleman@loganthompsonlaw.com<br>lhaywood@loganthompsonlaw.com |
| Harry Cash, Attorney; Megan Welton, Attorney | | X | megan.welton@millermartin.com<br>harry.cash@millermartin.com |

PENNY SHRUM, COURT CLERK  w/permission JD
wc.courtclerk@tn.gov