FILED
Apr 17, 2018
08:00 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| MICHAEL PATTERSON,<br>    Employee,<br>v.<br>HUFF & PUFF TRUCKING,<br>    Employer,<br>AND<br><br>PRAETORIAN INS. CO.,<br>    Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2017-05-1265<br><br><br>State File No.: 85818-2016<br><br><br>Judge Robert Durham |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This case came before the Court for an Expedited Hearing on April 3, 2018. The issues are whether Mr. Patterson is entitled to additional medical and temporary disability benefits following his release from the authorized orthopedist's care. The Court holds Mr. Patterson is likely to establish that Huff and Puff is required to provide the requested benefits. Thus, it grants his requests.[1]

### History of Claim

On October 17, 2016, Mr. Patterson was driving a truck for Huff and Puff on Interstate 40 just east of Knoxville. Traffic stopped due to construction, and as he sat on the interstate, Mr. Patterson's truck was rear-ended by another tractor-trailer. The impact caused Mr. Patterson's truck to ram the vehicle in front of him, creating extensive damage to the truck's cab. Mr. Patterson testified he felt several other crashes jarring him back and forth as other vehicles became involved. However, he did not seek medical attention immediately following the accident.

Mr. Patterson reported the wreck to Paul Wheeler, Safety Director for Huff and

---

[1] The parties stipulated that Mr. Patterson suffered a work-related accident; that his compensation rate is $771.02; that if the right-shoulder labral tear was compensable, Huff and Puff shall pay the reasonable and necessary medical expenses incurred for treatment and temporary disability benefits from April 18, 2017.

Puff. Mr. Wheeler drove to the scene from the Murfreesboro area, and he and Mr. Patterson spent several hours transporting and securing the truck and its cargo. Mr. Wheeler then drove Mr. Patterson to his home in Cannon County, approximately 30 miles southeast of Murfreesboro.

Mr. Patterson testified he woke up the next morning in "excruciating pain up and down his right side." At the emergency room, he complained of bilateral shoulder and low back pain and possible loss of consciousness the previous day. Diagnostic tests reported normal findings except for cervical x-rays which showed moderate degenerative changes. After providing medication, the hospital discharged Mr. Patterson with diagnoses of possible concussion and low back and right shoulder pain.

Huff and Puff authorized Dr. Martin Glynn, a general practitioner, to treat Mr. Patterson's asserted injuries. At his first visit, Mr. Patterson complained of headaches and severe pain in his right shoulder and the right side of his neck. Dr. Glynn diagnosed a concussion, cervical strain, and right shoulder strain. He eventually ordered physical therapy for the cervical and shoulder complaints. Dr. Glynn later noted that Mr. Patterson claimed he could no longer lift his right arm above his head with his arm extended out to the side. Dr. Glynn noted "slow progress" with the right shoulder because Mr. Patterson continued reporting he could not extend his right arm above ninety degrees without pain, despite participating in ongoing physical therapy. Mr. Patterson also began complaining of low back pain, depression, anxiety, and "flashbacks."

Mr. Patterson completed therapy with little improvement. In December, Dr. Glynn referred him for orthopedic and neurologic care. Huff and Puff provided specialist panels to Mr. Patterson. The orthopedic panel included Dr. James Rungee, who practices in Murfreesboro, and two Nashville-based orthopedists. Mr. Patterson chose Dr. Rungee.

Dr. Rungee first saw Mr. Patterson in January 2017. Mr. Patterson noted a primary complaint of right shoulder pain extending to his neck on the intake form. Dr. Rungee diagnosed him with "persistent right neck and shoulder pain." A cervical MRI revealed a "disc osteophyte complex" but no obvious impingement. Dr. Rungee felt the osteophyte pre-existed the accident but that the accident could have made it symptomatic. Mr. Patterson underwent an epidural steroid injection but claimed the injection did not help. Dr. Rungee still felt most of Mr. Patterson's complaints stemmed from his neck, although he did not rule out a shoulder problem.

In March, Mr. Patterson returned to Dr. Rungee. Before returning, he underwent neuropsychological testing by Dr. James Walker, as ordered by Mr. Patterson's authorized neurologist, Dr. Richard Rubinowicz.[2] Dr. Rungee noted Dr. Walker's

---

[2] Dr. Rubinowicz treated Mr. Patterson for asserted neurologic complaints, including memory loss, headaches, double vision and loss of cognitive function. Following Dr. Walker's assessment, Dr. Rubinowicz released Mr. Patterson from neurologic care and declined to refer him for psychological treatment.

2

conclusion that Mr. Patterson did not suffer from any cognitive disorders that prevented him from working and related "his complaints of extreme psychiatric symptoms . . . to his rather histrionic style." Dr. Rungee also noted a change in Mr. Patterson's shoulder complaint. He now claimed that he could not physically elevate his arm because his shoulder became "mechanically stuck." On exam, Mr. Patterson would only actively abduct his shoulder above 30 degrees. Dr. Rungee ordered a shoulder MRI despite his belief that it would not show anything to explain Mr. Patterson's symptomology.

Upon return to Dr. Rungee following the MRI, Mr. Patterson still complained of his shoulder "locking up" at 90 degrees abduction as well as pain in his neck and shoulder radiating to his fingertips. On exam, Mr. Patterson actively lifted his arm only level with his head, but Dr. Rungee stated he could passively move the shoulder through full range of motion. Dr. Rungee reviewed the MRI and found a labral tear but no damage to the rotator cuff. Dr. Rungee stated their meeting was a "bit tense" as he conveyed the labral tear did not explain Mr. Patterson's symptoms and that surgery would not alleviate them.

In April, Mr. Patterson returned for an evaluation of his low back complaints. Dr. Rungee reviewed MRI film and told Mr. Patterson he did not have any nerve compression to explain his complaints. At that point, Mr. Patterson "expressed frustration" and requested another doctor for his shoulder. Dr. Rungee again told him that the labral tear did not explain his symptoms or his purported inability to raise his arm. He declined to make any recommendation other than a functional capacity evaluation (FCE) to determine Mr. Patterson's physical capabilities.

The FCE stated that Mr. Patterson put forth a valid effort and could work in the "light physical demand" category. On April 17, Dr. Rungee met with Mr. Patterson for the last time. Mr. Patterson remained discontented and complained he felt he did not receive good care from Dr. Rungee. He again demanded a second opinion and told Dr. Rungee that when he got one, he would bring it to Dr. Rungee to "prove" he was wrong. Dr. Rungee stated it was clear that "there was nothing I could tell him that would salvage a relationship." He determined Mr. Patterson was at maximum medical improvement (MMI) and released him subject to the FCE restrictions. He concluded his report by stating, "We will not see him back."

Mr. Patterson's counsel emailed the handling adjuster and requested another orthopedic panel because Dr. Rungee refused to provide further treatment. The adjuster declined. On April 28, Huff and Puff terminated Mr. Patterson because it could not accommodate his restrictions.

On May 19, 2017, Mr. Patterson sought unauthorized treatment with Dr. Jeffrey Peterson, an osteopath, for pain along the entire right side of his body. On exam, Mr. Patterson actively raised his outstretched arm above his shoulder to 110 degrees, but Dr.

3

Peterson could raise it to 150 degrees. Dr. Peterson ordered an arthrogram, which did not reveal any abnormalities. He followed up with an MRI that, according to the report, revealed some degenerative changes at the AC joint which caused mild impingement but did not reveal any rotator cuff or labral tears. However, Dr. Peterson reviewed the film and believed a follow-up with a shoulder specialist should occur. Further, he believed Mr. Patterson's shoulder problems were due to his work-related accident since he had no complaints before, and "he's had nothing but trouble" since.

At Dr. Peterson's request, Dr. Stephen Neely saw Mr. Patterson for a second opinion. Dr. Neely found the shoulder to be stiff and painful. Although he could not pinpoint the cause, he felt the situation called for an arthroscopic evaluation for a possible labral tear and to decompress possible impingement.

On December 21, Dr. Peterson performed arthroscopic surgery on Mr. Patterson's right shoulder to repair the "obvious" tearing of the anterior/superior labrum at the biceps insertion. Dr. Peterson's most recent note of February 16, 2018 stated that Mr. Patterson was undergoing physical therapy. Mr. Patterson had no concerns or complaints, and Dr. Peterson did not place any restrictions on his activities. However, he indicated Mr. Patterson would return in six weeks.

Dr. Peterson and Dr. Glynn, the initial authorized physician, both provided written opinions supporting the work-relatedness of Mr. Patterson's injury. In response to a letter from Mr. Patterson's counsel, Dr. Peterson wrote that the right shoulder injury arose primarily from the motor vehicle accident on October 17, 2016. In response to another letter, he stated that Mr. Patterson's pre-surgical inability to abduct his shoulder beyond 90 degrees was due to the labrum tear; that his care was reasonable and necessary; and that Mr. Patterson was not at MMI on the first day he saw him. Dr. Glynn also wrote that Mr. Patterson's right shoulder injury arose primarily out of and in the course and scope of his employment on October 17, 2016, in response to a letter from Mr. Patterson's attorney.

Huff and Puff submitted Dr. Rungee's deposition. Dr. Rungee testified that, in his opinion, Mr. Patterson did not suffer a right-shoulder labral tear in the accident. Essentially, he based this opinion on two grounds. One, he believed that if the accident had actually torn the labrum, Mr. Patterson's pain would have been so intense he would have required immediate medical attention rather than waiting until the next morning. Two, a torn labrum simply could not cause the shoulder joint to "lock up" at 90 degrees, as Mr. Patterson claimed it did several months after the accident.

Dr. Rungee further stated that if Mr. Patterson now claims that he has full range of motion after his surgery, it only proves that Mr. Patterson was lying when he told him that he couldn't move his shoulder. In fact, Mr. Patterson's claim that his shoulder "locked up," along with his increasing hostility and Dr. Walker's neuropsychological

4

assessment, caused Dr. Rungee to believe Mr. Patterson did not suffer any injury in the accident. Finally, Dr. Rungee admitted that their relationship deteriorated through the course of treatment and that he did not like treating Mr. Patterson because their relationship became more "controversial" with each visit.

At the hearing, Mr. Patterson testified that he did not have any right shoulder problems before his accident. He also vigorously maintained that he could not physically lift his outstretched arm above his head prior to his surgery. However, he demonstrated that he could now do so by raising his arm over his head without apparent difficulty.

### Findings of Fact and Conclusions of Law

Mr. Patterson need not prove every element of his claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, the essential issue is whether Mr. Patterson provided sufficient evidence to show he is likely to prevail at trial in establishing that he suffered a right-shoulder labral tear on October 17, 2016. The medical evidence submitted provides opposing views on this issue.[3] Thus, the Court must consider the evidence to determine which opinion should be accorded the most weight. *See Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016).

In weighing these contrary opinions, the Court holds that Mr. Patterson is likely to prevail in establishing causation and rebutting any presumption of correctness that might be afforded to Dr. Rungee's causation opinion, even though the Court believes Dr. Rungee's explanation that a labral tear would not cause a shoulder joint to mechanically "lock up." Despite Mr. Patterson's exaggerated symptoms, the Court finds the following evidence compelling in crediting Drs. Peterson's and Glynn's opinion over Dr. Rungee's as to causation.

Huff and Puff cannot dispute that Mr. Patterson was in a serious accident in which his vehicle rammed forcefully into another, causing substantial damage to the truck and the trailer. Mr. Patterson testified he had never experienced pain in his shoulder before the accident, and Huff and Puff provided no evidence to the contrary. Mr. Patterson consistently complained of right shoulder pain beginning with his emergency room visit the day after the accident. The FCE noted valid effort. Based on Dr. Peterson's operative

---

[3] The parties made extensive arguments as to whether Dr. Rungee was an "authorized" physician, thus affording his opinion a statutory presumption of correctness. However, the Court finds that Mr. Patterson provided sufficient evidence to rebut Dr. Rungee's opinion by a preponderance of the evidence even if the presumption did apply. Thus, the Court declines to address whether Mr. Patterson selected Dr. Rungee from a valid panel.

report, Dr. Neely observed that Mr. Patterson's shoulder was stiff and painful, thus warranting an arthroscopic evaluation. Mr. Patterson did have an actual labral tear which required repair. Drs. Peterson and Glyn provided opinions that Mr. Patterson's right shoulder complaints were work-related. Mr. Patterson's testimony that his complaints improved following surgery supports the likelihood of proving a work-related injury to his shoulder.

Finally, Dr. Rungee primarily based his opinion against causation on the grounds that Mr. Patterson did not seek medical care immediately after the accident and that he made exaggerated complaints. The Court is not convinced that Mr. Patterson's decision to wait until the next day to seek medical care is as significant as Dr. Rungee believed, given the circumstances immediately following the accident. And while the exaggerated complaints certainly go to Mr. Patterson's credibility, the Court does not give it the weight Dr. Rungee seemed to do, particularly in light of the evidence described above. It is clear from testimony that the relationship between Dr. Rungee and Mr. Patterson became increasingly hostile as Mr. Patterson grew frustrated with his perceived lack of care. Therefore, after weighing the available evidence in its entirety, the Court holds Mr. Patterson is likely to overcome any presumption of correctness that might be afforded Dr. Rungee's causation opinion and prove at trial that he sustained a labral tear in his right shoulder as a result of his October 17, 2016 accident.

Based on these findings, the Court also holds that Huff and Puff is obligated to pay for the reasonable and necessary medical expenses incurred for the treatment of Mr. Patterson's shoulder injury following Dr. Rungee's dismissal. "An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A)." *See Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016). Of course, before it is obligated to do so, "the employer must first be given an opportunity to provide the treatment." Further, "[w]hether an employee is justified in seeking additional medical services to be paid for by the employer without consulting the employer depends on the circumstances of each case." *Id.* (*quoting Dorris v. INA Ins. Co.,* 764 S.W.2d 538, 541 (Tenn. 1989)).

Here, Dr. Rungee made it clear in his April 17, 2017 note that their relationship could not be "salvaged" and he would not see Mr. Patterson again. Upon receiving this note, Mr. Patterson's counsel requested another panel from the adjuster, and the adjuster refused to provide one. The Court finds that under these circumstances, Mr. Patterson was justified in seeking medical services on his own, including surgery and was under no obligation to notify Huff and Puff of his continued treatment. *See Barrett v. Lithko Contracting, Inc. et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 93, at *8 (Dec. 8, 2016).

Finally, Dr. Peterson stated that Mr. Patterson was not at MMI from his shoulder condition as of April 17, 2017, the date Huff and Puff terminated his temporary disability

6

benefits.    The Court agrees with this assessment given that he underwent shoulder surgery and has testified as to his substantial post-surgical improvement in his shoulder. Mr. Patterson has yet to return to work, and Dr. Peterson has not stated he is at MMI. However, on February 16, 2018, Dr. Peterson released Mr. Patterson with no physical restrictions on his activities.   Given this evidence, the Court holds that Mr. Patterson is likely to prevail in proving entitlement to temporary disability benefits from April 18, 2017 through February 16, 2018, at the stipulated compensation rate of $771.02.

IT IS, THEREFORE, ORDERED that:

1. Huff and Puff shall pay for the reasonable and necessary medical expenses Mr. Patterson incurred through treatment of his right shoulder by Dr. Jeffrey Peterson. Dr. Peterson shall be designated as Mr. Patterson's authorized doctor with regard to any further treatment of his right shoulder.

2. Huff and Puff shall pay temporary partial disability benefits from April 18, 2017, until February 16, 2018, at the compensation rate of $771.02 for a total of $33,594.44.

2. This matter is set for a Scheduling Hearing on May 29, 2018, at 1:30 p.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing.   Failure to call may result in a determination of the issues without your participation.

**ENTERED THIS THE _17_<sup>th</sup> DAY OF April, 2018.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

7

# APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Pre-Hearing Statement
5. Employer's Witness and Exhibit List
6. Employer's Expedited Hearing Brief

Exhibits

1. Separation Notice
2. Wage Statement
3. Mr. Patterson's affidavit
4. Dr. Glynn's response to causation letter
5. Dr. Peterson's medical records
6. Dr. Walker's medical records
7. Physical therapy records
8. Rutherford County Hospital medical records
9. Dr. Glynn's medical records
10. Dr. Rungee's medical records
11. Additional records from Dr. Peterson
12. Dr. Peterson's response to causation letter
13. Dr. Peterson's response to second causation letter
14. Dr. Peterson's Curriculum Vitae
15. Dr. Rubinowicz's medical records
16. Traffic accident report (I.D. only)
17. Dr. Rungee's deposition
18. Further records from Dr. Peterson
19. Employer's response to Request for Admissions
20. Choice of Physician form
21. Accident scene photos

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on April 17 2018.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Michael Fisher | | X | mfisher@ddzlaw.com |
| Michael Jones | | X | mjones@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

9