

**FILED**
**Feb 11, 2022**
**09:45 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **CHRISTOPHER CUTSINGER,** | ) | **Docket No. 2021-06-0007** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BELLSOUTH** | ) | **State File No. 48212-2020** |
| **TELECOMMUNICATIONS, LLC,** | ) | |
| **Employer,** | ) | |
| **and** | ) | **Judge Joshua Davis Baker** |
| **OLD REPUBLIC INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Carrier.** | ) | |

_____

## EXPEDITED HEARING ORDER
_____

In a February 2, 2022 expedited hearing, Mr. Cutsinger requested medical and temporary disability benefits. Specifically, he requested authorization for treatment from neurologist Dr. James P. Anderson, three visits to a walk-in clinic after he had obtained maximum medical improvement and referrals resulting from those visits. He also requested temporary disability due to Bellsouth's inability to accommodate restrictions imposed during the unauthorized visits.

Because Mr. Cutsinger's authorized physician is willing to treat him and an injured worker is not entitled to temporary disability benefits after attaining maximum medical improvement, the Court finds he is unlikely to prevail on those requests at a final hearing. However, the Court holds that Mr. Cutsinger can continue to see his authorized treating physician, Dr. Scott L. Parker.

### Claim History

Mr. Cutsinger injured his shoulders and neck in July 2020 while lifting traffic cones. Bellsouth accepted his claim, and after initial treatment with CareNow, Mr. Cutsinger chose neurosurgeon Dr. Parker from a panel of physicians.

Dr. Parker testified by deposition that he provided nonsurgical treatment after an EMG demonstrated "no signs of active cervical radiculopathy," and an MRI "only showed some mild to moderate changes, no severe compression on the nerves or anything . . . that would require . . . any sort of urgent surgery." So, he focused on "other complaints and issues," which required referrals to other specialists.

However, Bellsouth questioned the work-relatedness of Dr. Parker's referral to neurologist Dr. Anderson for a cognitive evaluation for symptoms of "significant stress and anxiety," as these symptoms pre-existed the work injury and seemed unrelated to lifting traffic cones. Indeed, as recently as a year before the injury, Mr. Cutsinger had used FMLA leave for "depression, anxiety, [and] panic attacks."

To clarify the relationship between work and the anxiety, the adjuster sent Dr. Parker a yes/no questionnaire, and he checked boxes in January 2021 suggesting his neurology referral for a cognitive evaluation and for cervical radiculopathy "primarily arises out of the employment event." To explain the connection between a cognitive evaluation and the work injury, he relayed, "Patient reports significant stress and anxiety due to radicular arm pain and subsequent treatments." To clarify its medical necessity, he wrote simply, "Given his symptoms and no structural cause identified on MRI[,] I would recommend evaluation by neurology for cognitive evaluation."

Despite Dr. Parker's affirmative responses, Bellsouth maintained its denial of the neurology referral, so Mr. Cutsinger began treating with Dr. Anderson using his private insurance.

Dr. Parker's opinion concerning the neurology referral changed over time, and he confirmed in his deposition that he had no outstanding treatment recommendations or referrals when he released Mr. Cutsinger from his care. About the neurology referral, he testified, "I don't believe it would be more than 50 percent related to the work injury."

Bellsouth did not dispute Dr. Parker's other referrals, so Mr. Cutsinger saw Dr. Scott Baker for pain management and Dr. Douglas Matthews for carpal tunnel and ulnar nerve complaints. Both doctors examined him and released him without restrictions in April and May 2021.

On May 18, after reviewing those doctors' evaluations, Dr. Parker also released Mr. Cutsinger from care. He wrote, "It is my recommendation that he is at MMI for this and does not require a follow-up appointment. He can return to work and driving with no restrictions." Although the injury did not require any follow-up, Dr. Parker testified that Mr. Cutsinger "can always return . . . any patient is always welcome to come back."

Only two months after Dr. Parker released him, Mr. Cutsinger returned to CareNow, the same clinic he had visited at the outset of his claim, for treatment of the same work

injury. He acknowledged on cross-examination that he did not seek permission from the carrier or third-party administrator before going there. As a result of these visits, Mr. Cutsinger obtained new referrals and work restrictions from July 15 to August 5, 2021.

When Mr. Cutsinger sent the CareNow restrictions to his supervisor and requested medical care, his supervisor directed him to the third-party administrator and explained he could not accommodate the restrictions. Instead, he advised Mr. Cutsinger to use paid sick leave from July 15 to August 5. For his part, Mr. Cutsinger could not recall whether he had used paid sick leave or a short-term disability plan for his absence from work during the three-week period the CareNow physician had restricted his work.

Bellsouth refused to pay for the CareNow visits or accept the treatment recommendations and restrictions of its physician. Bellsouth argued Mr. Cutsinger should have returned to Dr. Parker instead of going to CareNow for treatment.

**Findings of Fact and Conclusions of Law**

Mr. Cutsinger must present sufficient evidence that he is likely to prevail at a final hearing to receive benefits at this expedited hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

He requested authorization for treatment by Dr. Anderson, payment for three unauthorized visits to CareNow, and provision of the treatment recommendations and referrals resulting from those visits. He also requested temporary disability benefits for three weeks, the timeframe his CareNow physician restricted his work.

Mr. Cutsinger argued that Bellsouth should have authorized the referral to Dr. Anderson given Dr. Parker's questionnaire responses and that, under Tennessee Code Annotated section 50-6-204(a)(3)(E), Dr. Anderson is now his authorized treating physician.

However, this argument fails to consider Dr. Parker's recent testimony that the neurology referral was not related primarily to the work injury. And while Dr. Parker had checked "yes" boxes to support the neurology referral as work-related, his written explanations barely buttressed those affirmative answers, yielding somewhat vague and confusing support. For example, he wrote that Mr. Cutsinger connected significant stress and anxiety, which pre-existed the work injury, "to radicular arm pain and subsequent treatments," but he did not explain how that connection related to the work injury or the need for a neurology referral.

Dr. Parker's deposition testimony is the most recent opinion the Court has concerning the neurology referral. He has also agreed to continue seeing Mr. Cutsinger.

For these reasons, the Court finds that Dr. Parker is still Mr. Cutsinger's authorized treating physician and holds that he is unlikely to prevail at a final hearing on his request for treatment with Dr. Anderson. However, he may still see Dr. Parker if he needs further care.

Concerning payment for his unauthorized visits to CareNow, an injured worker has a statutory duty to accept the medical services offered by his employer. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). Further, an employer must first be given an opportunity to provide treatment. *Dorris v. INA Ins. Co.*, 764 S.W.2d 538, 541 (Tenn. 1989) (An "employee [should] do no less than to consult [the] employer before incurring expenses called for by the statute if the employee expects the employer to pay for them."). Whether an employee is justified in seeking additional medical services to be paid by the employer without consulting him depends upon the circumstances of each case. *Harris v. Kroger Co.*, 567 S.W.2d 161, 163 (Tenn.1978).

Here, Mr. Cutsinger did not explain why he returned to CareNow instead of contacting Dr. Parker's office or the adjuster. Although he told his supervisor he needed medical care, his supervisor appropriately directed him to contact the third-party administrator. Given this, the Court cannot find that Mr. Cutsinger fulfilled his statutory duty to accept the medical services provided or that he supplied reasonable justification for incurring unauthorized treatment. Thus, he is unlikely to prevail on his request for authorization of the CareNow visits at a final hearing.

Turning to temporary disability benefits, Bellsouth offered unrefuted expert testimony from the authorized physician that Mr. Cutsinger was at maximum medical improvement concerning his work-related conditions on May 18, 2021. Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn.1978).

Mr. Cutsinger asked for temporary disability benefits from July 15 to August 5, 2021. Because Dr. Parker placed him at maximum medical improvement before July 15— thereby extinguishing his right to temporary disability—Mr. Cutsinger is unlikely to prevail at a final hearing on his claim for temporary disability benefits.

**IT IS ORDERED** as follows:

1. The Court denies Mr. Cutsinger's requested relief at this time.

2. The Court orders Bellsouth to continue paying for Mr. Cutsinger to receive reasonable and necessary treatment from Dr. Scott Parker.

3. The Court sets this claim for **a scheduling hearing on Monday, March 28, 2022, at 10:30 a.m. Central Time.** The parties must call (615) 741-2113 or toll-free at

(855) 874-0474 to participate.  Failure to call might result in a determination of the issues without the party's participation.

**ENTERED February 11, 2022.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# **APPENDIX**

Exhibits

1. Medical Records with Table of Contents
2. Deposition of Dr. James Parker
3. Choice of Physician form, unsigned with CareNow as a potential selection
4. Choice of Physician form, selecting Dr. Scott Baker
5. Triage Notes
6. Job Description of an AT&T facility technician
7. Choice of Physician form, selecting Dr. Scott Parker
8. Rule 72 Declaration of Christopher Cutsinger
9. Plan of Care from Dr. James Anderson dated January 4, 2022

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Dispute Certification Notice Submission
5. Order Setting Expedited Hearing
6. Employer's Response to Employee's Request for Expedited Hearing
7. Employer's Exhibit List
8. Employee's Motion to Approve Cognitive Evaluation
9. Employer's Response to Motion to Approve Cognitive Evaluation
10. Employee's Motion to Approve CareNow visits
11. Employer's Response to Motion to Approve CareNow visits
12. Employee's Motion to Receive Dr. Parker's Questionnaire
13. Employer's Response to Motion to Receive Dr. Parker's Questionnaire
14. Notice of Filing Deposition Transcript of Christopher Cutsinger
15. Motion for Extension
16. Order Granting Extension
17. Notice of Filing the Deposition Transcript of Dr. Scott Parker

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on February 11, 2022.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Christopher Cutsinger, Employee | | | X | gotsync@bellsouth.net |
| Kristen Stevenson, Employer's Attorney | | | X | kcstevenson@mijs.com<br>ssshell@mijs.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*